## HANCOCK v. LUKE, et al.

### No. 2665.   Decided March 9, 1915 (148 Pac. 452).

1.  PLEADING—CONSTRUCTION. Under Comp. Laws 1907, section 2986, declaring that a pleading should be liberally construed with a view to substantial justice, the mere form of a denial of particular allegations of a complaint is not conclusive.   (Page 32.)

2.  CORPORATIONS—STOCK PURCHASE—RESCISSION—COMPLAINT—SUFFICIENCY.  A complaint which alleged that plaintiff, relying on enumerated false representations by defendants, purchased shares of stock in a corporation which were worthless, and which had been tendered back and refused by defendants, stated a cause of action.   (Page 32.)

3.  PLEADING—MOTION FOR JUDGMENT ON. Plaintiff's motion for judgment on pleadings is in legal effect a general demurrer to the answer, and hence searches the entire record, including the complaint.   (Page 32.)

4.  PLEADING—MOTION FOR JUDGMENT ON. The courts possess the inherent power, independent of statute, to direct judgment on the pleadings in case a cause of action is not set forth in the complaint, or no legal defense is presented in the answer.
    (Page 33.)

5.  PLEADING—MOTION FOR JUDGMENT ON—DENIAL. Plaintiff's motion for judgment on the pleadings should be denied, where the answer is not clearly defective.   (Page 33.)

6.  PLEADING—AMENDMENT—ALLOWANCE. Where it did not appear that defendant would be unable to state a defense, his motion for leave to amend, made immediately after rendition of judgment on the pleadings, was improperly denied, as coming too late, particularly as the answer attempted to traverse the allegations of the complaint.   (Page 35.)

McCARTY, J., dissenting in part.

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by George B. Hancock against Francis G. Luke and another.

Judgment on the pleadings for plaintiff. Defendants appeal.

REVERSED AND REMANDED.

*Chris Mathison, A. L. Hoppaugh* and *S. P. Armstrong* for appellants.

*M. E. Wilson* and *Bismark Snyder* for respondent.

FRICK, J.

This is an appeal from a judgment on the pleadings. The plaintiff, an attorney at law, commenced this action in the district court of Salt Lake County on March 29, 1913, to rescind a contract entered into by him with the defendants in December, 1908. The plaintiff alleges in his complaint:

"(1) That heretofore, to wit, on or about the 12th day of December, 1908, at Salt Lake City, Utah, plaintiff and defendants entered into a contract in writing, by the terms of which defendants agreed to sell to plaintiff, and plaintiff agreed to purchase from defendants, five shares of the capital stock of the Merchants' Protective Association, a corporation under the laws of Utah, for the sum of $2,500, and that a certificate or writing, purporting to be certificate No. 33 of said the Merchants' Protective Association, for said five shares of stock, was thereupon delivered to plaintiff; and plaintiff thereafter paid defendants the said sum of $2,500.

"(2) That in and by the terms of said contract it was further agreed that plaintiff should be employed for an indefinite period by said the Merchants' Protective Association, at an agreed monthly salary, the defendants assuming to act for and represent said corporation to the extent of making said contract for such employment; and that, in accordance with

the said provision of said contract, plaintiff entered into the employ of a collection business purporting to operate as and in the name of the Merchants' Protective Association, on or about the said 12th day of December, 1908, and continued in its employ until on or about the 1st day of January, 1913, during which time he received the monthly salary prescribed in said contract.

"(3) That immediately before and at the time said contract was executed, and as an inducement to plaintiff to execute the same, defendants stated and represented to plaintiff that a certain collection business then being conducted by defendants was owned by the Merchants' Protective Association, a corporation under the laws of Utah, with a total authorized capitalization of 100 shares, of which the defendants were the owners of not less than 85 shares, they having purchased all said stock from the original incorporators of said corporation and their assignees; that defendant Francis G. Luke was the general manager of said corporation, and that it was in an exceedingly prosperous condition, so much so that its stock, which had a par value of only one dollar per share, had increased to an actual value of $500 per share; that it was the owner of judgments against various individuals amounting to at least $1,000,000, all of which could and would be collected, and the proceeds of which, when collected, would belong to said corporation; that it had a large reserve fund, amounting to not less than $10,000 on deposit with McCornick & Co., Bankers, of Salt Lake City, Utah; that it was not indebted to any of its clients in any sum whatever, but had always kept its collections of money belonging to clients fully paid up as fast as such collections were received by it; that its business standing in the State of Utah and elsewhere was first-class, which would enable it to increase its business in the future, and that it had unsettled business in its possession, which, without any new business whatever, would enable it to continue operations and pay dividends of not less than 12 per cent. per annum upon its stock, valued at $500 per share, for many years.

"(4) That plaintiff relied upon said representations so made to him by defendants, and believed the same and each

and all of them to be true as stated, and such representations formed the sole and only consideration and inducement to plaintiff to enter into said contract with defendants, which he would not have executed and entered into, had he not believed said representations and each of them to be true.''

The plaintiff, in substance, further alleged that the representations set forth were false and were known to be so by the defendants; that they were not, at the time said contract was entered into or at all, the owners of the capital stock aforesaid; that said collection business was not as represented by them; that the defendants did not, nor did said Merchants' Protective Association, own collectible solvent judgments to the value of $1,000,000, or any other sum in excess of $100; that neither the defendant Francis G. Luke individually, nor said association, had on deposit with McCornick & Co., Bankers, or elsewhere, any moneys, and that said capital stock was not worth in excess of one dollar per share; that in the month of June, 1912, he obtained the first intimation or information that the representations made by said defendants respecting the extent and value of their business and the amount of their assets and the value of said stock were false, and that they knew that said representations were false when made; that said capital stock was and is worthless, and plaintiff, in the month of January, 1913, and before bringing this action, tendered said stock to said defendants and demanded repayment to him of said $2,500 paid therefor, which demand defendants refused. The plaintiff did not set forth the contract, but contented himself with stating its effect.

The defendants filed an answer in which they admitted the formal parts of the complaint and explained and denied the allegations of the complaint in the following terms:

''(2)   The defendants deny that they procured said agreement from the plaintiff by fraud and misrepresentation, as alleged in paragraph numbered 3 of the plaintiff's complaint, and deny, particularly, that, immediately before and at the time said contract was executed, they made any or all of the following representations: That the stock of said Merchants' Protective Association had an actual value of $500 per share; that the said association was the owner of judgments, amount-

ing to $1,000,000, all of which could and would be collected, or that the proceeds of each judgment would, when collected, belong to said corporation; that it had on deposit with McCornick & Co., Bankers of Salt Lake City, Utah, a large reserve fund amounting to not less than $10,000; that said Merchants' Protective Association was not indebted to any of its clients in any sum whatever, or that it always kept fully paid up its collections of money belonging to clients as fast as such collections were received by it; that it had unsettled business in its possession which, without any new business whatever, would enable it to continue operations and pay dividends of not less than twelve per cent. per annum upon the stock, valued at $500 per share, for many years.

" (3)    And, on the contrary, the defendants say: That, at the execution of said contract, the plaintiff well knew, and for two months prior thereto had known, that, by an agreement between the defendant Francis G. Luke and the said Merchants' Protective Association, the said defendant was entitled to all the eranings, profits, and income of the said association, including its proportion of any and all judgments owned or controlled by it; and the defendants did not, at any time before or at the execution of the said contract between the defendants and plaintiff, represent or agree that the proceeds of such judgments, or the proportionate share thereof belonging to said Merchants' Protective Association, should be set aside as a surplus fund or to increase the capital and assets of the said corporation, or that the same should be paid out as dividends to its stockholders, all of which said plaintiff well knew; and the defendants show that it is recited in said contract that said corporation, Merchants' Protective Association, does not pay dividends, and at the execution of said contract the plaintiff understood and knew that he was not, and would not, be directly interested in the business of said corporation or in the profits of the same, whether as dividends or interest or by whatever name they might be called, but, on the contrary, the plaintiff knew that defendant Francis G. Luke was entitled to all the income, earnings, and profit of said Merchants' Protective Association by reason of the agreement hereinbefore mentioned, and accepted the personal cove-

nants of the defendants to pay him the monthly salary stipulated for in said agreement, and to pay the interest on the $2,500 so invested by the plaintiff; and the defendants further allege that before and at the time of the execution of said contract between plaintiff and defendants, and before and at each and all the times plaintiff paid to defendants the installments of said $2,500, as stipulated in said agreement, the plaintiff had full knowledge of the true value of said stock, of the course of business between the said Merchants' Protective Association and its clients, and of the resources, assets, liabilities, and actual condition of said corporation.

"(4)    The defendants deny each and every other allegation in the said complaint contained."

The defendants then proceed to set forth, with much particularity and detail, the acts and conduct of the parties with respect to the contract referred to by the plaintiff. The relation of the defendants to the collection business of said association and their rights or interest therein are also set forth. The extent and value of the business are also stated. In other words, the defendants set forth their version of the transactions between the parties relative to said collection business and pursuant to said contract, and in stating their version, while they refer to the same matters referred to in the complaint, they nevertheless state many of them in such a manner as to negative the statements of the plaintiff. The contract is also set forth, and it is alleged that thereunder the plaintiff was paid and received annually twelve per cent. interest on said $2,500, and also received the monthly salary specified in the contract; that, at the time he entered into said contract and accepted employment thereunder, he was a young attorney without practice or experience, and that he entered into said contract and paid said sum of $2,500, and entered upon said employment, for the purpose of gaining experience and the necessary experience to fit him for the practice of law, and that he was paid more than his services were actually worth. By reference to the contract, it will be seen that no time is specified therein respecting the duration of said employment. All that is mentioned there in that regard is that the salary of the plaintiff

is to be increased from time to time as the increase in profits of the association might justify, not, however, to exceed the sum of $250 per month; that at the expiration of ten years the defendants agreed to repurchase said stock from the plaintiff in case he should desire to sell it and to pay him therefor one-half the amount paid by him for it, or that they would pay him a salary of $250 per month from that time forward.

There were no objections interposed by either party to the pleadings until the case was called for trial, when the plaintiff moved for judgment on the pleadings, which motion was granted by the court, and judgment for the plaintiff was accordingly entered for $2,500. The defendants assign the ruling of the court in granting said motion and in entering judgment as aforesaid as error.

Where, as here, many of the denials contained in an answer are cast in the form of negative pregnants, all of which are followed by a sweeping general denial, it is not always easy to determine just what the effect of the denials is. This is especially so where, as here, each party also affirmatively states his own version of a series of transactions which, in many respects, differ in their details and effect. Under our statute, ''a pleading for the purpose of determining its effect, its allegations must be liberally construed with a view to substantial justice between the parties.'' Comp. Laws 1907, Section 2986. Where it is clear, therefore, that a denial of particular allegations of the complaint was intended, the mere form of such denial is not always conclusive.

Some point is sought to be made by the plaintiff upon the fact that, at the time the motion for judgment on the pleadings was made, the defendants also interposed an objection to the introduction of any evidence upon the ground that the complaint did not state facts sufficient to constitute a cause of action. There is nothing to that contention. The motion for judgment on the pleadings was, in legal effect, a general demurrer to the answer, and such demurrer searches the entire record, including the sufficiency of the complaint. If the complaint, therefore, had been deficient in substance, the motion, regardless of defendants' objection, would have been fatal to it. We are of the opinion, however,

that the complaint was sufficient to withstand a general de-
murrer.  The question therefore arises: Did the court err in
sustaining the motion for judgment on the pleadings and in
entering judgment as prayed for in the complaint?

We have no statute authorizing such a motion.  The courts
are, however, practically unanimous in holding that courts of
general jurisdiction possess inherent power, independently of
statute, to direct judgment on the pleadings in case a
legal cause of action is not set forth in the complaint  **4, 5**
or, if there is, when no legal defense is presented there-
to in the answer.  Motions for judgments on the pleadings
are, however, not favored by the courts, and upon such a
motion the pleadings will be construed with great liberality
in favor of the party whose pleadings are assailed.  *Bowles* v.
*Doble,* 11 Or. 480; *Currie* v. *So. Pac. Co.,* 23 Or. 400, 31 Pac.
963; *James River, etc., Bank* v. *Purchase,* 9 N. D. 280, 83 N.
W. 7; *Giles, etc., Co.* v. *Recamier Mfg. Co.,* 15 N. Y. St. Rep.
354.  In the last case cited the court says:

"It is a dangerous practice to allow either party to interpose an
oral demurrer, at the trial, to the pleading of his adversary.  If a
pleading be substantially defective, the honest course is to demur
to it, and thus give court and counsel a fair opportunity to examine
and consider the question of law that is involved.  If there be any
reasonable doubt as to the insufficiency of the pleading, the court
should deny a motion that is sprung at the trial for judgment on
the pleadings."

See, also, 31 Cyc. 605, 606, to the same effect.

Courts generally do, and always should, require the par-
ties to proceed to the merits, if such a course is permissible,
after giving the allegations and averments contained in the
pleadings, and the necessary inferences arising therefrom, a
liberal construction and application.  Of course, if in no view
that may be indulged in favor of the pleadings the law sanc-
tions a defense, then but one course is permissible, and that
is judgment for plaintiff on the pleadings.  It is contended
that such should be the result under the answer in the case at
bar.  It is true that the denials, with the exception of the
general denial ''of all other allegations,'' are in the nature

of negative pregnants, and thus ordinarily do not raise an
issue. It is also true that the general denial can cover only
those matters not covered by the special denials, which per-
haps are not many nor of great importance. There are, how-
ever, many affirmative statements and averments in the answer
which, when liberally construed, as they must be, may never-
theless put in issue some of the material allegations of the
complaint. An affirmative statement in one pleading very
often is equivalent to a denial of another affirmative state-
ment in the pleading of the opposite party, and this is especi-
ally true when construed in connection with a denial. Plain-
tiff, however, contends that, even when so construed, the an-
swer, considered as a whole, presents no defense to the cause
of action set forth in the complaint. For example, it is con-
tended in that connection that it is apparent from the an-
swer itself that the plaintiff received no consideraion from the
defendants, or either of them, for the $2,500 paid by him to
them, and hence he, in any event, is entitled to recover that
sum from them. We need not and we shall not now stop to
consider whether a plaintiff may entirely depart from the
allegations of his complaint and rely upon the allegations
contained in an adversary's answer to recover a judgment
upon a theory entirely different from that upon which the
complaint is framed. That he may do so may well be doubted.
It is, however, further contended that from an inspection of
the contract, which is set forth by the defendants as a part
of their answer, it is apparent that its provisions are unen-
forceable because they lack mutuality; and for the further
reason that no time is specified in the contract during which
the employment therein contemplated should continue. In
this connection it should be remembered that the plaintiff in
his complaint shows that he continued for a period of more
than four years to enjoy all the benefits of the contract he now
seeks to repudiate. Let it be conceded, therefore, that the
contract is unenforceable, yet it does not follow from that
alone that either of the parties, after receiving the fruits
thereof, may not in equity be required in some form to account
to the other party. Without now attempting to determine
the equities and rights of the parties to the contract, we remark

that it may well be that after the answer is amended in accordance with the offer made by defendants' counsel, and all the evidence, pro and con, is heard and considered, and the law is applied thereto, although the plaintiff may be entitled to judgment, yet he may not be entitled to the full sum of $2,500 as against the defendants. The contract is not void because it contravenes a positive statute, nor because it is contrary to public policy. Whatever rights, therefore, may have arisen by reason of its part performance may require adjustment as between the parties by a court of equity. We desire it distinctly understood, however, that we do not at this time pass upon what the rights of the parties may be under the contract, or under the present state of the pleadings, in view of its part performance. That matter, as a matter of course, cannot be adjusted, except upon a full hearing. All that we now hold is that although, under the answer as it now stands, it were conceded that plaintiff is entitled to judgment, yet inasmuch as the defendants have applied for leave to amend their answer, and in view that in our judgment they should be permitted to amend, therefore the extent of the relief that defendants may be entitled to, if any, cannot be now determined.

Immediately following the ruling of the court sustaining plaintiff's motion for judgment on the pleadings, defendants' counsel asked leave to amend the answer as hereinafter set forth. The court denied the application to amend, and the ruling of the court is now assigned as error as follows:

"The court erred in denying defendants' motion to amend their answer."

In defendants' brief the foregoing assignment is reiterated, and counsel then insist and argue that the court erred in refusing to allow them to amend the answer. The authorities in support of their contention are cited on page 14 of their brief. What was said in the brief was supplemented and enlarged upon in oral argument at the hearing. In their printed abstract counsel set forth what occurred at the time the application to amend was made in the following words:

"Thereupon the defendants moved to amend the answer. Before defendants could state the particulars wherein they

proposed to amend, the court sustained an objection by plaintiff that the motion came too late, and overruled the motion, to which defendants excepted.''

Counsel for plaintiff assert that the proceedings are not correctly reflected in the foregoing statement, and they have set forth the proceedings which they contend took place at the time, by producing a transcript of the stenographer's notes. The transcript produced reads as follows:

''Mr. Armstrong (for defendants): Now we make a motion, if the court please, to amend the answer. Mr. Wilson (for plaintiff): We wish to resist that motion, of course, your honor, because it comes too late. In the first place, there isn't anything to amend. Mr. Armstrong: There are some allegations in the answer that we hadn't noticed, having been called into the case just lately, that may be a little ambiguous. Mr. Snyder (for plaintiff): I submit, your honor, it is too late now. Mr. Wilson: I would like to be heard on it if the court has any idea of entertaining it. The Court: It will be overruled. Mr. Armstrong: Take an exception. Mr. Wilson: We ask for judgment, your honor. The Court: You may have it. Mr. Armstrong: Exception. Mr. Wilson: We will draw it up later and serve it on counsel. The Court: We will just consider ourselves adjourned.''

If we take plaintiff's version of what occurred at the time, still we cannot see how it helps his case. It is manifest that, immediately after the court had announced its ruling upon the motion for judgment on the pleadings counsel for defendants moved ''to amend the answer.'' Up to the time the court ruled, and while the motion remained ''in the breast of the court,'' it certainly could not be known what the ruling would be. If the ruling had been favorable to the defendants, then, perhaps, in the view of counsel, no amendment of the answer would have been necessary. If, however, the ruling was in favor of the plaintiff, as it in fact was, then, unless counsel for defendants desired to stand on their answer, they had the right, we think, to ask and to obtain leave to amend the same. We cannot conceive what plaintiff's counsel meant by the statement that the motion for leave to amend came ''too late.'' Certainly no judgment had been formally ren-

dered at the time, and of course none could have been en-
tered, as the colloquy between court and counsel shows. Why,
then, was the offer to amend not timely? In case pleadings
are assailed, must a party move to amend before he is ap-
prised of what the ruling of the court will be? We think
not. We are of the opinion, therefore, that the motion for
leave to amend was timely. We are also of the opinion that,
under the circumstances, it constituted reversible error for
the court to deny the motion for leave to amend. It is quite
clear that it was the intention of the attorney who drew the
answer to deny the allegations of the complaint respecting
fraud and the misrepresentations as well as some of the other
allegations. It is equally apparent that, in the opinion of the
District Court, he had failed to do that. It is also clear that,
in pleading the affirmative matters contained in the answer,
the pleader left many of them in doubt by failing to make
clear and concise statements. All those statements, as well
as the denials, were amendable, however, and, if properly
amended, might set forth a defense to the cause of action,
to some extent at least, either negative or affirmative. What
we mean is that it cannot be said in advance that the answer
could not be so amended as to set forth at least a partial de-
fense to the matters set forth in the complaint. If, in this
case, plaintiff had interposed a general demurrer to the an-
swer, and the court had sustained it, the defendants would
have been permitted to amend their answer as a matter of
course, under the practice, if not as a matter of absolute
right. This is the view that is taken by the author of Pom-
eroy's Code Remedies (4th Ed.), Section 454. In our judg-
ment there is not a respectable attorney practicing in this
jurisdiction who would question the right of his adversary
to at least attempt to amend a pleading after a general de-
murrer thereto had been sustained by the court. Is there any
reason for a different rule in case of a motion for judgment
on the pleadings? We confess our inability to discover any
substantial difference between a general demurrer and a mo-
tion for judgment on the pleadings, in so far as the right to
amend is concerned. In *Doll* v. *Good*, 38 Cal. 287-291, the
Supreme Court of California directed the lower court to grant

defendant leave to amend his answer, although the court held that the lower court erred in not sustaining plaintiff's motion for judgment on the pleadings. Courts ordinarily encourage rather than discourage all proper amendments to the pleadings, to the end that a full hearing may be had upon all phases of the controversy in the trial courts before the case is taken to the Appellate Court for review. In our judgment, all the authorities are to that effect.

Bliss on Code Pleading (3d Ed.), Section 429, says:

"Courts should be liberal in allowing amendments to the end that cases may be fully and fairly presented on their merits."

The author further says:

"The power of amendment of pleadings is great under the Code. The real limitation seems to be that the amendment shall not bring a new cause of action."

The rule is admirably stated by Mr. Justice Jaggard in the case of *Todd* v. *Bettingen*, 102 Minn. 260, 113 N. W. 906, 18 L. R. A. (N. S.) 263, in the following words:

"The right of the trial court to make amendments is recognized by statute and enforced by well-settled practice, permitting such amendments with great liberality, so as to properly determine the merits of legal controversies. The trend of modern judicial opinion is wholly opposed to allowing mere mistake in form to defeat the substantial rights of parties. The right of amendment in the earlier stages of the proceedings may be a matter of course. In later stages, amendments are liberally allowed for cause shown, upon application to and by leave of the court, upon terms, it may be."

We can see no reason whatever why the defendants in this case should be denied the right of amendment when the exercise of that right is a matter of daily occurrence in our courts of justice. True, motions for judgment on the pleadings may be rare, but that is no reason why the right of amendment should be denied when timely proposed, as in the case at bar. Nor can we conceive how any one can say in advance that in this case at least a partial defense may not be set forth by a proper amendment to the answer. Nor can we see how it can successfully be contended that the motion for leave to amend was not timely made, or that prejudice or undue delay will result if allowed.

The judgment is therefore reversed, and the cause remanded to the District Court of Salt Lake County, with directions to set aside the judgment and to proceed with the case as herein suggested, to permit the defendants to amend their answer, and, if the court is of the opinion that the answer does state a defense as just indicated, then to permit the plaintiff also to amend, if he is so advised, and to proceed to hear the case upon the merits and to make such disposition thereof as in his judgment the law and the facts require, and in accordance with the views herein expressed.  Defendants to recover costs.

STRAUP, C. J.

It is rare where a court, on pleadings, ought to render judgment against one not slothful and offering to amend, unless nothing issuable is or can be tendered. It is claimed nothing such was tendered; but look at the ruling. To the defendants' offer "to amend the answer" came the objection "too late" and "nothing to amend." On that objection leave to amend was denied, not because nothing issuable was tendered, but because the offer to amend, regardless of substance, came too late, and because the answer was unamendable. It is claimed I am in error as to this. The record must speak as to that. It is fully set forth in the prevailing opinion. Looking at the objections and the ruling, I think it clear that leave to amend was denied because the offer came too late, and because there "wasn't anything to amend." Counsel's remark at the time that some of the allegations of the answer "may be a little ambiguous" is pointed to as indicating the particulars of a tendered amendment. I think that somewhat strained. Then see the only objection following the remarks, "I submit, your honor, it is too late now," the same objection interposed at the threshold of the offer "to amend the answer." Upon that followed the ruling denying the offer. Now, I do not think the ruling should be upheld on the ground that nothing issuable was tendered, for manifestly, on the objections and by the ruling, no opportunity was given the defendants to amend or to present anything. Granting or refusing leave to amend a pleading, and permitting or denying a proposed amend-

ment, are different things. One should not be punished for
failure to propose terms of a good amendment, when at the
threshold leave to amend at all was denied him. I think the
court ought to have granted leave. To have done so would
not have occasioned unnecessary delay or any harm. Were
there exigencies demanding it, the court could have required
a tender of the amendment within even a few hours. When
made, the court then could have determined what, if anything,
issuable on the pleadings, as amended, was presented, and
could have proceeded accordingly. That the present answer
may be insufficient is reason to grant, but not to deny, leave
to amend. It certainly is not so bad as to be wholly incurable.
. Then it is further claimed that I rule the case on some-
thing not presented and not argued. Again must we submit
to the record. The assigned errors are correctly stated in the
prevailing opinion. They go to the rulings: (1) Holding
the complaint good; (2) granting judgment on pleadings;
and (3) refusing defendants to amend. True, the greater
part of the briefs is devoted to rulings 1 and 2, but 3 is not
unnoticed. It also is discussed, maybe not in language used
by me; but I prefer to use my own. The point, however, is
there, is assigned, and is discussed. It is also noticed in the
prevailing opinion, and the case largely ruled on it. In that
I concur. I do not think it fair to the record to treat it as
abandoned and to review the case alone on ruling 1 and 2.
But let us look at 2. The action is to rescind a contract on
the ground of fraud. The contract itself is not set forth in
the complaint, nor is a copy attached to it. Its contents are
pleaded in most general and vague terms. They are that
the plaintiff agreed to buy and the defendants to sell five
shares of the capital stock of the association for $2,500, and
that ''thereupon the stock was delivered to the plaintiff, who
paid the defendants said sum of $2,500''; that it was further
agreed that ''the plaintiff should be employed for an indefi-
nite period'' by the association ''at an agreed monthly sal-
ary''; and that in pursuance of the contract he entered and
continued in the employment for about four years, ''during
which time he received the monthly salary prescribed in said
contract.'' The amount of salary he was to receive, or did

receive, is not alleged by him. He, however, did allege that his employment and salary were a part of the contract which he seeks to repudiate and rescind. That is all he states as to the substance of the contract. He asks to have it rescinded on the ground of misrepresentations. The representations are alleged in paragraph 3 of the complaint and as set forth in the prevailing opinion, followed by allegations of their falsity, plaintiff's reliance on them, and injury. These constitute the charging part of the complaint. They are denied by paragraphs 2 and 3 of the answer, also set forth in the prevailing opinion, followed by a general denial and affirmative averments. Now, conceding that the denials of the representations, in the language of the complaint, are insufficient, yet it ought further be conceded that they are amendable. If they are bad and not aided by other denials and averments in the answer, they are so because they are not sufficiently specific and certain. And, if the defendants desired to make them more specific and certain, why deny them that right? But I think the denials, aided as they are by the general denial, and other affirmative averments, sufficiently put in issue the charging portions of the complaint to ward off a motion for judgment on pleadings.

The defendants pleaded the contract in extenso by attaching a copy of it to the answer. This, it is said, for various reasons, is a bad and an unenforceable contract, and for that reason should the defendants, in equity, be required to repay plaintiff the $2,500 received by them from him. Then is it also said that the contract together with the defendants' affirmative allegations, shows that the plaintiff, in legal effect, but loaned the defendants $2,500, which they, on his demand, ought to repay. But see the cause declared on and then how plaintiff wanders from it. He must take a stand somewhere. He took it where he was required to take it—in his complaint. It is to rescind the contract on the ground of fraud, alleged false representations relied on by him to his injury. To aid and support him in that he, of course, may look to the answer. But he may not wholly depart from his complaint and look alone to the answer as the foundation for another cause or other relief. To recover at all he must recover within the

cause and upon the grounds stated in his complaint. To permit him to go beyond that is to disregard basic principles and functions of pleadings. Neither the contract as pleaded by the defendants nor their affirmative allegations aid the plaintiff in the cause as stated by him. They do not show that the alleged representations were made, or that they were false, or that the plaintiff relied on them, or because of them he was induced to enter into the contract, or caused to perform any of its conditions, or was harmed. They, in such respect, tend to negative all that.

And then to entitle him to recover on his alleged theory of repudiation and rescission and on his alleged grounds of fraud and misrepresentations, and to be restored to what he in pursuance of the contract paid out, he must himself do equity and account for or offer to restore what, if any, benefits he himself received on part performance and in pursuance of the contract. He alleged he offered to surrender the certificate of stock. But he also alleged that he for four years "received the monthly salary prescribed in said contract." He did not allege what that was. The defendants alleged it was $100 a month for the first three months, $125 for the next three, and $150 a month thereafter. They alleged that he also received twelve per cent. per annum on the $2,500 or $1,200 for the four years which was paid in lieu of dividends. It may be that what he received by way of salary is balanced by services rendered by him, that by way of dividends by interest on the money paid out by him, and hence on a rescission of the contract, equity would not require restoration on his part, further than contained in his offer, a surrender of the certificate. But it is better to adjudicate than to assume that. If on the other hand, and as is argued in the next breath, the contract is subsisting but terminable at will, and that by its terms the plaintiff, in legal effect but loaned the defendants $2,500, subject to his demand, then let him so aver and proceed on that theory. I do not think he can do so on what he has now averred. I therefore think the case should go back with directions to set the judgment aside and to permit either party on his application to amend. If neither desires to amend then to proceed to trial on the issues presented by the complaint.

McCARTY, J. (dissenting).

I, too, am of the opinion that the complaint states a cause of action. Taking the answer by the four corners, and assuming all the matters therein alleged that are not in conflict with the provisions of the contract to be true, plaintiff is entitled to recover. It is suggested that the specific denials of the answer, aided by the general denial and the affirmative matters pleaded therein, "put in issue the charging part of the complaint." If this is true, then, of course, the defendants were entitled to a trial on the merits. I think, however, an examination of the pleadings will show that the answer utterly fails to put in issue any material allegation of the complaint. The denials of fraud, etc., contained in the answer are, so, far as material here, as follows:

"Defendants deny that they procured said agreement from the plaintiff *as alleged* in paragraph 3 in plaintiff's complaint, and deny particularly that, *immediately before and at the time said contract was executed,* they made any or all of the following representations" (reciting the substance of the allegations of fraud contained in the complaint).

These denials are in the form of negative pregnants, and do not put in issue the substance of the allegations of the complaint charging fraud; but they, in effect, admit the important facts—the fraud—therein averred. 1 Bates Pl. & Pr., p. 340; Pomeroy's Rem., Section 509; Bliss, Code Pl. 332; 31 Cyc. 253; *Coal Co.* v. *Sanitarium Co.,* 7 Utah 158, 25 Pac. 742; 5 Words and Phrases 4739; Volume 3, Second Series, 550. Nor are the denials aided by the general denial, which is as follows:

"The defendants deny *each and every other* allegation in said complaint contained." (Italics mine.)

It will thus be observed that the general denial does not deny, nor is it directed to, any of the allegations of the complaint that are specifically denied. The answer must be considered and construed in connection with the provisions of the contract referred to in the answer, and which is made a part thereof. The contract, so far as material here, provides:

"That the parties of the first part (defendants), in consideration of the payment of two thousand five hundred dol-

lars, * * * and the employment of the party of the second part (plaintiff), as hereinafter set forth, hereby agree to sell to the party of the second part five shares of the capital stock of the Merchants' Protective Association corporation, being five one-hundredths of the total capitalization, and to guarantee the profit thereon as follows: (1) The parties of the first part hereby guarantee to the party of the second part twelve per cent. per annum upon the amount paid for said stock (in lieu of dividends, said corporation paying no dividends), so long as said party shall remain in the employ of the Merchants' Protective Association, and, in addition, guarantee the party of the second part salary during said employment as follows: One hundred dollars per month during the first three months and one hundred and twenty-five per month for the next three months * * * (3) And the party of the second part hereby agrees during the existence of said contract to work for and under the direction of the first parties as attorney at law, and render his best services for the corporation above named. * * * The salary and compensation above referred to to be increased by said corporation from time to time as the increased net profits of the association justifieth, but said salary is not expected to exceed two hundred fifty dollars per month. (4) The parties of the first part agree that at the expiration of ten years, should the party of the second part want to sell out, that the parties of the first part will purchase back from him the stock which he originally bought and pay him one-half of what he paid for it. * * * Dated December 12, 1908.''

This contract was terminable at will by either party. The Lukes could have terminated the contract and dispensed with the services of Hancock on the day he entered their employment; and, on the other hand, Hancock at any time could have quit the services of the Lukes; and in neither case could one party have successfully maintained an action for damages against the other. *Price* v. *Loan & Savings Co.*, 35 Utah 379, 100 Pac. 677, 19 Ann. Cas. 589, and cases therein cited. The contract being terminable at will by either party, the allegations contained in the complaint that plaintiff was induced to enter into it by false and fraudulent representa-

tions should be regarded as matters of inducement only, and the prayer that the contract be canceled as redundant. Neither the proof of the one nor the granting of the other is, as I view the case, a necessary pre-requisite to plaintiff's right to recover. If, however, the doctrine announced in *Price* v. *Loan & Savings Co., supra,* shall be repudiated and the contractual relations of these parties, under the terms of the agreement, shall be held to be interminable, and that plaintiff therefore could not, except for fraud, terminate the agreement without forfeiting to the defendants the $2,500, then, of course, the fraud and fraudulent representations charged in the complaint are matters of substance and an essential element in plaintiff's cause of action. But, taking this view of the case, it follows that since the fraud charged in the complaint is admitted by the negative pregnant denials, herein referred to, of the answer, the question of whether the contract was terminable at will by either party is not of vital importance.

The affirmative allegations of the answer, so far as material, are as follows:

(1) That on December 12, 1908 (the day the contract referred to was made and executed), the defendants were the owners of more than 85 per cent. of the capital stock of the Merchants' Protective Association, organized under the laws of Utah "with a capital stock of $100, divided into 100 shares of the nominal value of $1 each; that the capital, property, and assets of said corporation have always been of small value; that since the year 1893, and during all of the times mentioned in the plaintiff's complaint, the defendant Francis G. Luke has had an agreement with said corporation whereby he was entitled to the entire income from the business of said Merchants' Protective Association."

(2) "That on the 12th day of December, 1908, the trade-name of the said Merchants' Protective Association and the good will of the business so carried on by it were of great value and *due solely to the energy, enterprise and business acumen of the defendants,* and to the large amount of money invested in the said business by the defendant Francis G. Luke."

(3) That during the period from the year 1901 to and including the year 1912 ''the defendants have annually received from the' profits of said business large sums of money, to wit, in the aggregate for the period aforesaid, the sum of $111,-734.64. * * *

(4) That before and at the time of the execution of said agreement the defendants informed the plaintiff that such stock was of *small or no intrinsic value,* and informed him that their purpose in requiring the purchase of the same was not in any wise to make him a partner in the business but a pledge or guaranty that he would not, after a comparatively brief period in their employ, * * * quit the service of the defendants. That the plaintiff understood and knew that he was not, and would not be, directly interested in the business of said corporation or in the profits of the same, whether as dividends or interest or by whatever name they might be called; but, on the contrary, the plaintiff knew that defendant Francis G. Luke was entitled to all the income, earnings, and profit of said * * * association by reason of the agreement hereinbefore mentioned, and (plaintiff) accepted the personal covenants of the defendants to pay him the monthly salary stipulated for in said agreement, and to pay the interest on the $2,500 so invested by plaintiff.''

(5) That defendants ''required of the plaintiff, as a condition of such employment, and particularly as an earnest, that he would remain in their employ, that he purchase five shares of the capital stock of the said Merchants' Protective Association * * * at the price of $2,500, * * * and the defendants agreed to pay interest on the said purchase price during the continuance of their agreement.''

(6) That defendants ''have duly performed all the conditions of the said contract on their part to be performed and have paid the plaintiff salaries far in excess of what, by reason of the plaintiff's negligence and inattention to business, his services were worth to defendants. And, until said contract was terminated by the plaintiff, * * * the defendants were ready and willing to perform every condition thereof on their part to be performed.''

(7) That plaintiff ''left said service at the end of four

years without the consent of the defendants. * * *

"Wherefore the defendants pray that the plaintiff take nothing by his said complaint, and that it be dismissed."

It will thus be observed that the defendants, in their answer, affirmatively allege that they obtained $2,500 of plaintiff's money, which they now hold, for five shares of the capital stock of a corporation, whose "assets and property * * * have always been of small value," and that the five shares of stock was "of small or no intrinsic value." They further, by the affirmative allegations of their answer, show that the stock has no speculative or prospective value because Francis G. Luke has "an agreement with the said corporation whereby he is entitled to the entire income of the corporation." True, they suggest in the discussion of the case in their printed brief that, "in case of the death of Francis G. Luke or his severance of connection with the corporation as manager," the business of the corporation "would become a valuable asset of the stockholders." As I have pointed out, it is alleged in the answer that the "great value" of the "trade-name" and "good will" of the business is "due solely to the energy, enterprise, and business acumen of the defendants." Therefore, according to the allegations of the answer, it necessarily follows that if Francis G. Luke, as suggested by counsel, should sever his connection with the corporation, the business would be deprived of much, if not practically all, the "energy, enterprise, and business acumen" which it is claimed makes its "trade-name and good will * * * of great value." Moreover, there is no allegation in the answer that there is any probability that Francis G. Luke will, during the lifetime of the plaintiff, pass to that bourne from which "no traveler returns," and there is nothing in the answer from which it can be inferred that he has any intention, during the existence of the corporation, of canceling and surrendering the contract, which, up to the time of filing the answer, has yielded him a net profit of over $10,000 annually. These, however, may be the "ambiguities" counsel had in mind when they asked leave to amend. Let that be as it may, even if the answer contained such allegations, and they were admitted to be true, they would not defeat, nor tend to defeat, plaintiff's

action. Defendants allege in their answer, and the contract shows, that the pretended purchase of stock by the plaintiff "was not in any wise (intended) to make him a partner in the business." Therefore, even if Francis G. Luke should sever his relations with the business, such action on his part would not in any way affect plaintiff's rights and obligations under the contract.

Plaintiff, under the allegations of the complaint, and by virtue of the contract as defendants themselves construe it, is entitled to judgment. Defendants, in their printed brief, say:

"The $2,500 was paid (them) under the *guise* of the purchase of five shares of stock," and that "he accordingly * * * bought his way into the practice of the law, not by payment of a lump sum outright, * * * but by turning in on halves what business he had on hand and by payment of $2,500 in the *nature of a loan on which he received twelve per cent. interest.*"

The $2,500 was therefore, under the allegations of the answer, and according to defendants' construction of the contract, payable to plaintiff on demand.

When the case was called for trial, plaintiff moved for a judgment on the pleadings, and the defendants objected to the taking of any testimony on the complaint and moved for a dismissal of the action. In other words, both parties had presented a motion to the court for a judgment on the pleadings. After the issues of law thus presented had been decided in favor of plaintiff and against the defendants, counsel for defendants, addressing the court, said:

"Now we make a motion * * * to amend the answer."

Counsel for plaintiff, addressing the court, said:

"We resist the motion * * * because it comes too late. * * * there is nothing to amend."

. Counsel for defendants:

"There are some allegations in the answer that we hadn't noticed, having been called into the case just lately, that may be a little ambiguous."

The court had before it the answer, which, while it contains much redundant matter, does not contain an allegation

that is in any sense ambiguous.  As I view the case, it would have been an abuse of discretion for the court to have vacated the order directing that judgment be entered for plaintiff in order to permit defendants, by amendment, to clear up an ambiguity that existed only in the imagination of counsel. Moreover, defendants did not suggest or point out to the court wherein they claimed that the answer "may be a *little* ambiguous."

Since the foregoing was drafted, the Chief Justice has written an opinion concurring in the conclusions reached by Mr. Justice Frick.  As the Chief Justice seems to have overlooked or treated as immaterial an element in the proceedings pertaining to the offer to amend which I regard as of vital importance, I shall at the risk of being prolix in the matter, make some further observations and again invite attention to the request for permission to amend and the ruling of the trial court thereon. The answer was filed May 6, 1913.  On January 31, 1914, nearly nine months after the issues were made up, the case was called for trial.  Defendants therefore had ample opportunity to consider the sufficiency of their answer and to prepare and tender any amendments they might deem necessary. Plaintiff moved the court for judgment on the pleadings. The record shows that this motion was argued by counsel for the respective parties.  Defendants were therefore advised of the grounds upon which the motion was based and had an opportunity to move the court for permission to amend their answer before a ruling was had on the motion.  It seems that they preferred to stand on their answer as framed and take the judgment of the court as to its sufficiency.  The motion was properly presented and submitted, and the court was called upon to make a ruling thereon, which it did by granting the motion.  For the court to have denied the motion in the face of the admissions and affirmative allegations contained in the answer would have been, as I view the case, a most flagrant and inexcusable error.  As I have pointed out, every fact necessary for plaintiff to establish to entitle him to a judgment is either admitted or alleged in the answer. Therefore why go through the empty formality of requiring

plaintiff to prove that which the defendants, under the high sanctions of an oath, have admitted and alleged? No authority can be found that even countenances, much less requires, such a vain and useless proceeding. This court in the case of *Utah Ass'n of Creditmen* v. *Bowman*, 38 Utah 326, 113 Pac. 63, Ann. Cas. 1913B, 334, held that default in an action by a defendant, who was duly and regularly served with summons, is "tantamount to an admission that the plaintiff is entitled to a judgment as prayed for by him." And it is further held in that case that the judge—the court—cannot compel the plaintiff, who has taken a default as provided by statute, to introduce evidence in support of the allegations of his complaint. If this is good law and sound doctrine, and it must be accepted as such in this jurisdiction, why may not the court, in an action where defendant files his verified answer in which, as in the case at bar, he admits and alleges the facts necessary for plaintiff to prove, in order for him to maintain his action, render judgment on the pleadings? This question will admit of but one answer. Under such circumstances, the court has not only the power, but it is its duty, when its power in that regard is invoked, to render judgment on the pleadings.

In the case of *Stratton's Ind.* v. *Dines*, 133 Fed. 449, 68 C. C. A. 161, the rule as declared by the great weight of authority is tersely illustrated as follows:

"If, on all the pleadings, taken together, defendants were entitled to judgment, a practice resulting only in such a judgment cannot be substantially wrong. In such circumstances, motion for judgment on the pleadings is a useful and recognized practice."

In *Humboldt Min. Co.* v. *American Mfg. M. & M. Co.*, 62 Fed. 356, 10 C. C. A. 415, the court says:

"It would seem to be absurd that when, upon the statements of the parties to the pleadings, one or the other is entitled to judgment, the court should go through the useless ceremony of submitting to a jury immaterial issues in order to enter judgment upon the pleadings without regard to the verdict."

Likewise in *Steinhauer* v. *Colmar*, 11 Colo. 494, 55 Pac. 291, it is said:

"If the defendant should answer, admitting all the allegations of the complaint, judgment would go against him without trial, because he confessed the plaintiff's right to a judgment. The judgment would be a judgment on the merits, but it also would be a judgment on the pleadings." 23 Cyc. 731; 11 Ency. Pl. & Pr. 1030.

See, also, case cited in note, p. 1032.

Again recurring to the offer to amend: It will be seen by referring to the record that the proposed amendment related to matters of form only, and it would not, if it had been allowed, have changed or in any way affected the answer as to matters of substance. The motion to amend consists of several disconnected statements of counsel, and, when stripped of all verbiage, it is as follows:

"We make a motion, if the court please, to amend the answer. * * * There are some allegations * * * that *may be a little ambiguous.*"

This is a clear and succinct statement of the character of the amendment defendants desired to make, and it is the, only amendment offered or proposed. It is suggested that this is a "somewhat strained" construction of the language used by counsel in their motion. It is not a construction of the language at all. It is the language used, and it is so plain, simple, and direct in its terms that there is nothing to construe. In order to give the motion any meaning other than its terms, as I have set them out, imply, it will be necessary to read into the record something that it does not contain. I submit there is not a paragraph, sentence, or phrase in the entire record that can be warped or tortured so as to suggest or imply that defendants desired to amend their answer in any particular other than the one mentioned. This is the portion of the record which the Chief Justice seems to have overlooked or regarded as unimportant. Assuming, for the sake of argument, that because counsel for plaintiff, in making objections to the granting of the motion, stated that "it came too late," and that there was "nothing to amend," the court probably based its ruling on one or both of these grounds. It does not follow from this that the ruling was error. No reason was given, nor was the court required to give any, for its ruling. Therefore the theory that the court may have

had in mind for making the order denying the motion is of no consequence. The question here to be determined is: Were the defendants entitled, as a matter of right, under the circumstances, to the amendment which they, speaking through their counsel, informed the court they desired to make, and did the court err in denying the motion?

While the answer, which was before the court, contains, as stated, much irrelevant and redundant matter, it does not, however, contain an allegation that is in any sense ambiguous. An amendment in that regard would have been a vain and useless thing. In 1 Ency. Pl. & Pr. 523, it is said:

"The court may properly refuse to allow an amendment which is immaterial, unnecessary, or indefinite, or which will not accomplish the purpose for which it is intended." 31 Cyc. 370.

Counsel for defendants have filed two elaborate briefs in the case, and in neither of them have they pointed out wherein they claim the answer is ambiguous. While they have, in general terms, mentioned the motion to amend, they have not discussed the amendment they desired to make. They have not even mentioned the alleged ambiguity which they desired to cure by amendment. In fact, the term "ambiguity" or its equivalent does not appear at all in their briefs. And they nowhere in their briefs point out or suggest any other defect or infirmity in their answer that they desired or now desire to cure by amendment. This court is not advised wherein defendants claim that the answer is susceptible of being amended as to substance. For aught that appears in the record or in the briefs of counsel, the controversy on the part of defendants, so far as it involves the question of amendment, may be for delay only. Defendants, under Rule 10 of this court, are not entitled, as a matter of right, to have the question of amendment reviewed or considered. I am also inclined to the opinion that, under the decisions of this court, they are deemed to have abandoned this particular assignment. *State* v. *Riley,* 41 Utah. 241, 126 Pac. 294. Let that be as it may, their failure to discuss the subject-matter of the proposed amendment—the alleged ambiguity—in their briefs is at least somewhat persuasive that they regard the question

as unimportant and without merit. It is suggested that it "is not fair to the record to treat it as abandoned." If my position on this point is unfair, it necessarily follows that Rule 10 promulgated by this court, and adhered to by it in former decisions, is unfair. I fail, however, to comprehend the philosophy or the justice in holding that the rule is sound and wholesome when invoked and applied in a case where the life of a human being is at stake but "unfair" when invoked and applied in a proceeding where, as in the case at bar, a party is seeking to avoid the payment of a debt which, according to his own version and admissions, made under oath, concerning the transaction out of which the debt arose, is a just, legal and binding obligation. The fact that the question of amendment "is noticed in the prevailing opinion, and the case largely ruled on it," proves nothing, except that the rule is not invoked or applied in this case.

Defendants' discussion of the case is mainly devoted to the question of whether the answer tenders an issue entitling them to a trial on the merits and to the contention that the plaintiff should be required to account to them for a portion of the interest paid on the $2,500 involved, and for the monthly salary he received for his services during the four years he was in their employ, and that the money thus paid him should offset the $2,500 for which the action is brought. This last proposition is, under the admitted facts, so repugnant to my ideas of justice, and is so at variance with the elemenatory rules of law governing contracts of this kind, and, in my opinion, so utterly void of merit, I would not discuss it, were it not for the fact that the prevailing opinions seem to hold that an accounting may be had between the parties along these lines. As I view the case, it would be no more of a departure from well-established principles of law and justice to hold that a party who has money on deposit in a savings bank or loans money at a legal rate of interest must, when he seeks to withdraw his money from the bank or to collect the money loaned, "do equity" by tendering the bank or the borrower, as the case may be, the interest paid him for the use of his money or by discounting the principal in a sum equal to the interest paid, than it would to hold that, before plaintiff in

this case will be permitted to recover for the $2,500 in question, he must "do equity" by tendering to defendants the interest, or any part thereof, paid for the use of the money. The parties, so long as they did business under and in pursuance of the contract, were, of course, bound by its terms. The contract, which, as stated, is made a part of the answer, provided that plaintiff should receive a stipulated monthly salary for his services and interest at the rate of twelve per cent. per annum on the $2,500. Defendants allege in their answer that they "performed all the conditions of said contract on their part to be performed and have paid the salary and interest stipulated," and that plaintiff "left said service at the end of four years without the consent of plaintiff (defendants)," and in their prayer they ask "that the plaintiff take nothing by his complaint, and that it be dismissed." The pleadings, therefore, show that there was a settlement between these parties once each month on the question of services and salary, and at least once each year on the question—payment—of interest on the $2,500, for a period of four years. The plaintiff performed the services, and the defendants paid him the stipulated salary, and also paid him twelve per cent. interest per annum for the use of the $2,500. Plaintiff terminated the contract at the end of four years and demanded payment of the $2,500. Defendants refused to pay him the money or any part thereof. Defendants are demanding that the $2,500 be forfeited to them, not because plaintiff in any respect or on any occasion breached the contract, but because he terminated the contract, which he had a legal right to do, and refused to continue in their service. This is all there is to the case.

Again referring to the question of whether an accounting should be had between these parties, I invite attention to the printed brief of defendants, wherein they say:

"The respondent performed the services and received the salary prescribed in the contract. Appellants have the services and respondent has the salary."

Now, if plaintiff performed the services required of him under the contract (and we have the statement of defendants both in the verified answer and in their briefs that he did

perform them), under what rule of law or principle of equity or justice may he be compelled to account to the defendants for the money, or any part thereof, that they have paid him as salary for such services? I venture the statement that there is not an authority, except the two prevailing opinions in this case, that supports the contention of defendants in that regard. Moreover, the question of accounting is not raised or presented by the pleadings. No facts are alleged in either the complaint or answer upon which an accounting could be had, and such proceeding is neither contemplated nor asked for. The briefs of defendants, not the pleadings, are looked to as a basis for an accounting, should one be had. For the purpose of illustration, let us assume that legal and equitable principles are to be brushed aside in the case, and the business transactions between these parties, including the services rendered defendants by plaintiff, a settlement of which, the record shows, was had once each month during a period of four years, are reopened and thrown at large for readjustment and settlement. And on the accounting the preponderance of the evidence should show that the value of the plaintiff's services did not exceed fifty dollars per month during the time of his employment. It would necessarily follow that the court would be obliged to render judgment requiring plaintiff to account to defendants for the money paid him in excess of fifty dollars per month during the four years he was in their service. And, on the other hand, if plaintiff should prove by the greater weight of the evidence that the services he rendered defendants were actually worth $200 per month more than the salary paid him by defendants under the contract, he would be entitled to a judgment against defendants for $9,600 in addition to the amount directly involved in the suit. The mere suggestions of such a monstrous proposition ought to shock the conscience of any court. It may be said that these illustrations and deductions are unreasonable and somewhat far-fetched. They are, nevertheless, within the range of probabilities. Defendants, in their briefs, with much sarcasm, mingled with irony and ridicule, refer to plaintiff's ability, experience, and standing as a lawyer in belittling and contemptuous terms, and in their answer

they allege that they have "paid plaintiff far in excess of what, by reason of plaintiff's negligence and inattention to business, his services were worth to defendants." If what they say in that regard correctly reflects plaintiff's ability, efficiency, and character as a lawyer, it might not be a difficult matter for them to prove that a salary of fifty dollars per month was all, if not more, than his services were worth. On the other hand, defendants allege in their answer, referring to the magnitude of their legal business, that from the year 1901 to and including the year 1912 they paid in court costs alone $79,322.94; that during this period of time the net profits (all of which went to defendant Francis G. Luke) were $111,734.64. This alone tends to show that during the time plaintiff was in their employ they were engaged in much litigation. Plaintiff, therefore, might be able to show that his services were actually worth much more than the salary paid him by defendants. Let that be as it may, I submit that, to direct that an accounting be had between these parties along these lines, and on such accounting to compel either party to pay any sum of money to the other, would, in effect, as I view the case and understand the principles of law bearing thereon, be depriving a person of property, not by "due process of law," but in violation of law.

It is also suggested that the action was brought and relief asked for on one theory, and that the judgment is sought to be upheld on another and different theory, and for that reason the judgment cannot be maintained. The theory on which judgment was rendered, and the ground upon which plaintiff insists that it should be upheld, is that defendants admitted, and in their answer alleged, every fact which it otherwise would have been necessary for plaintiff to prove to entitle him to a judgment. While there is a general mingling and blending of legal and equitable propositions in the complaint, it nevertheless states a cause of action. And in view of the peculiar contractual and business relations of the parties, as shown by the admitted facts, I am not prepared to say that the complaint is defective in form. The mere fact that plaintiff has set forth in his complaint both legal and equitable grounds as a basis for the relief sought, and that the judg-

ment was rendered on the legal grounds only, cannot prejudice his case without offending against Section 19 of Article 8 of the Constitution of this state, which provides:

''There shall be but one form of civil action, and law and equity may be administered in the same action.''

Assuming, for the purpose of this case, that the complaint is open to the objections urged against it, these defects are cured by the affirmative allegations of the answer; that is, the material allegations of the complaint considered in connection with the allegations of the answer are sufficient to uphold the judgment. It is a well-recognized rule of practice that a defective complaint may be supplemented and cured by the allegations of the answer. In Pomeroy's Code Rem., Section 470, the author says:

"A defective. complaint or petition may be .supplemented, and substantial issues may thus be presented by the answer itself. When the plaintiff has failed to state material facts, so that no cause of action is set forth, but these very facts are supplied by averments in the answer, the omission is immaterial, and the defect is cured."

In *Chesney* v. *Chesney*, 33 Utah 503, 94 Pac. 989, 14 Ann. Cas. 835, a somewhat recent case, Mr. Justice Frick, speaking for the court, says:

"As to whether a judgment is supported by the pleadings depends, not upon the allegations of the complaint alone but upon a reasonable construction of all the pleadings when considered together."

And again:

"In other words, if there be a defect of substance in the complaint, by reason 'of which no cause of action is stated, and the answer supplies this defect, the defendant may not avail himself of the defect in the complaint after verdict and judgment."

In *Cavender* v. *Cavender*, 114 U. S. 464, 5 Sup. Ct. 959, 29 L. Ed. 212, the court says:

"Courts of equity are frequently required to act on the admissions of the answer without other proof. Thus, when a cause is heard upon bill and answer, the decree is based entirely on the admissions of the answer without other testimony. (Citing cases.) At all events, it does not lie in the mouth of a defendant in equity to complain that the court assumed his answer made under oath to be true and decreed accordingly."

And again, in the same opinion:

"If there was any defect in the statement made in the bill, it was rendered immaterial by the statements of the answer, and is not now ground of complaint." *Pindall* v. *Trevor*, 30 Ark. 250; *Richardson* v. *Greene*, 61 Fed. 423, 9 C. C. A. 565; *Hawthorne* v. *Smith*, 3 Nev. 182, 93 Am. Dec. 397; Bliss, Code Pl. 437; 1 Ency. Pl. & Pr. 915.

Unless legal principles are swept aside in this case, and the question of services rendered defendants by plaintiff and the monthly salary paid therefor is to be reopened and an accounting had between these parties respecting these matters, and all transactions involved therein covering a period of four years, it is evident that plaintiff cannot, under the prevailing opinions, ultimately recover anything in the action, because it necessarily follows that, if he is not entitled to judgment on a given states of facts when such facts are alleged and admitted in the answer to be true, he would not be entitled to judgment if he should go through the formality of establishing those facts by the introduction of evidence. To illustrate: Suppose that, when the case is called for trial, plaintiff shall product evidence showing: (1) That the five shares of stock he received from the defendants were of no appreciable value, and were not intended to and did not make him a stockholder of the Merchants' Protective Association, and that the true and real consideration for the $2,500 he advanced or turned over to defendants was the twelve per cent. interest per annum which they agreed to pay him for the use of the money; (2) that he terminated the contract under which the transactions were had, demanded of the defendants payment of the $2,500 and the interest due thereon. Defendants in their answer allege: *"That such stock was of small or no intrinsic value";* that the purchase of the same by plaintiff was not intended "in any wise to make him a partner in the business," and that he "was not and would not be directly interested in the business  *  *  *  or in the profits of the same," and that plaintiff "accepted the personal covenants of the defendants to pay him  *  *  *  the interest on the $2,500 so invested (loaned) by the plaintiff"; (2) and that "plaintiff  *  *  *  left said service (terminated the con-

tract) at the end of four years without the consent of the plaintiff (defendants)." It will thus be observed that the defendants have admitted—affirmatively alleged—all the material facts that plaintiff could prove under the allegations of the complaint and of the answer. Therefore, if he is not entitled to judgment on the facts admitted, it logically follows that the proof of those facts would not entitle him to judgment. It is therefore plain that under the law of the case, as declared by the prevailing opinions, plaintiff must ultimately forfeit to defendants the $2,500 which they say in their brief was "*in the nature of a loan,*" and for which he has received no consideration whatever, except the interest paid thereon for four years only.

For the reasons stated, I am clearly of the opinion that the judgment should be affirmed; but since plaintiff, under the law of the case, as declared by the prevailing opinions, has no rights in this controversy that the law will recognize and enforce, I think that, when the case is remanded, the trial court should be directed to enter an order dismissing the action, and thereby end the litigation.