465 P.2d 534

Paul BRAMEL and William B. Brooks, Plaintiffs and Respondents,

v.

UTAH STATE ROAD COMMISSION, Defendant and Appellant.

No. 11479.

Supreme Court of Utah.

Feb. 25, 1970.

Vernon B. Romney, Atty. Gen., Mark A. Madsen, Asst. Atty. Gen., Salt Lake City, for appellant.

Carman E. Kipp and D. Gary Christian, of Kipp & Christian, Salt Lake City, for respondents.

CROCKETT, Chief Justice.

Plaintiff truck driver, William B. Brooks, sues for personal injuries, and plaintiff truck owner, Paul Bramel sues for property damages, sustained when a truck-trailer loaded with 40,000 pounds of cucumbers traveling northward failed to make a sharp curve at the temporary end of Interstate Highway I-15 near its approach to 31st Street in Ogden and overturned.[1] Upon issues joined: (1) as to the defendant Road Commission's negligence in failing to post adequate warning signs for traffic approaching the temporary end of the freeway, and (2) the plaintiff-driver's contributory negligence, the district court made findings and judgment in favor of the plaintiff.

Defendant appeals, arguing that the evidence does not support a finding of its negligence, but on the contrary, compels a finding that the plaintiff was guilty of contributory negligence, and seeks judgment as a matter of law, or in the alternative, a new trial.

---

1. This action arose under the Utah Governmental Immunity Act. See Sections 63–30–1 through 63–30–34, inclusive, U. C.A.1953.

■ It is sometimes stated that the rule on appellate review is that we survey the evidence in the light most favorable to the prevailing party. But this is not true where the court has made express findings otherwise. The foundational rule on this aspect of procedure is that it is the trial judge's prerogative to find the facts; and this includes judging the credibility of the witnesses and the evidence, and drawing whatever reasonable inferences may fairly be derived therefrom. It is therefore more accurate to say that on review we survey the evidence in the light favorable to the findings, whichever party they may favor; and that they will not be disturbed on appeal if they are supported by substantial evidence.[2]

During the construction of the Interstate Freeway I-15 there was a temporary ending thereof for northbound traffic as it approached 31st Street in Ogden. In leaving the freeway, traffic was required to make a rather abrupt turn and proceed around three fourths of a circle (270 degrees) to lead it onto a detour. The pivotal finding upon which the judgment against the defendant rests is:

> * * * That at said time and place, the signs placed by *the State failed to give adequate, reasonable or sufficient notice* of the difficult and dangerous condition which existed or of the fact that traffic would be required to turn

onto a one lane sharply curving exit road and accomplish a 270° turn; * * *. Notwithstanding the above finding of the ultimate fact against the defendant on the issue of its negligence, the court did not go all the way in adopting the most favorable view of the evidence to the plaintiff's contention, but made the following additional recital as to the existence of signs on the highway:

> * * * *that at most* the signs included "Freeway Ends One Mile", at a point about one mile south of the off-ramp, "All Traffic Must Exit" about one-half mile south of the off-ramp, two black on Yellow 25 miles per hour speed signs about one-fourth mile from the exit, several red and white chevron channelizing signs, a horizontal black on white unlighted barricade at or immediately north of the exit, a 25 miles per hour black on yellow exit sign at or immediately south of the exit and a black on yellow arrow at the north edge of the exit; * * *.

The question of concern here is not the usual one as to whether the most favorable view of the evidence will support the findings and judgment, but whether, assuming the existence of signs as found by the trial court, *and* reviewing the other aspects of the evidence in the light favorable to the findings and judgment, his conclusions on

2. Memmott v. U. S. Fuel Co., 22 Utah 2d 356, 453 P.2d 155.

the issues: (1) as to the defendant's negligence and, (2) the plaintiff's non-negligence, are justified.

The answer to the first proposition is to be found in applying the test found so generally throughout the law of torts, and which is also applicable here: Did the defendant Road Commission discharge its duty of exercising reasonable care under the circumstances by placing adequate and appropriate warning signs for the safety of traffic using the highway.[3]

It is to be noted that the court's finding above quoted as to signs is somewhat equivocal in that it says the signs existing included "at most" those listed in the above quotation. This may suggest that if those were the signs which could have been there "at most," there may have been less. Nevertheless, for the purpose of our decision, let it be assumed that the court intended to indicate that those were the signs that were there. It is significant that, except for the quoted finding, there is no further description of the signs. Certain pictures were presented in evidence. But they are not very helpful, and in fact may be misleading, because both plaintiffs and defendant agree that they do not purport to show the signs as they existed at the time of the accident. In their discussion concerning the proffer of the pictures, counsel for both parties conceded that the pictures were taken three days after the accident and *after the signs had been changed.*

The following testimony relates to these pictures:

Q. Do they show it as it was when the accident happened?

A. No, sir.

Mr. Van Drunen [for State Road Commission]: Is it your position that this was the condition at the time of the accident?

Mr. Kipp [for plaintiff]: That is *not* my position.

Mr. Van Drunen: Then they're immaterial and irrelevant.

Mr. Kipp explained that he made no such claim as to the signs, but was offering the photographs to show the physical situation of the highway generally, and in doing so stated:

* * * The fact that they were taken three days later and that there were some new signs put up doesn't affect their probative value.

Whatever changes were made in the signs was done by the Road Commission, and the fair assumption is that it was for the purpose of reducing the danger of such accidents, and therefore, that the signs as

---

3. As to the duty to exercise reasonable care in keeping highways in safe condition for travel in regard to signs, see Provins v. Bevis, 70 Wash.2d 131, 422 P.2d 505 (1967); and see Edmunds v. Germer, 12 Utah 2d 215, 364 P.2d 1015.

shown in the pictures gave better warning than existed previously.

There is competent testimony in regard to the adequacy of signs that did exist at the time of the accident, and before the pictures were taken. Plaintiff driver, Brooks, said that the only signs he saw were some chevron signs quite some distance from the temporary end of the freeway; that he saw no blinkers or barricades, nor any arrow signs as he approached the exit, but that the only sign there was a small 25 miles per hour sign about 25 feet before the freeway ended, after seeing which he could not slow down enough to make the turn.

What could be regarded by the trial court as even more persuasive is the testimony of a disinterested witness, Mr. Clyde Beutler, a motorist who came along about a quarter of a mile behind the plaintiff's truck. He said that he also had difficulty himself in making the abrupt turn; that he and another man stopped to assist in the accident; that the other man went back:

* * * to signal cars to slow down as they were coming into this area, because at that time *there were several that came around and had the same difficulty that I had in negotiating the turn.*

Q. What difficulty did it appear to you from observing them that they were having?

A. Well, a couple of them actually slipped their tires on the pavement, they were trying to slow down for that, and I don't know if it was the shock of the accident, but I assumed that they were just going too fast coming into that area.

Q. Were all of them having difficulty?

A. Not all of them. Some of the slower drivers coming through didn't have any problem, but *the ones that were up to the normal speed on the freeway were having difficulty.*

Mr. Beutler also gave positive testimony that there was no chevron-type warning sign or barricade near the exit. He was asked:

Q. Did you ever see any of these chevron-type warning signs or barricades?

A. Not at this point on the highway.

Q. And, say within a quarter of a mile or a half mile of this exit ramp, had you seen any of these?

A. No, *there were none*. If I'd seen them I would have known what was happening, where I was going to have to go, but I didn't have any idea that there was a turn there.

These further observations are pertinent: According to the defendant's booklet on road construction, which was presented in

·evidence, there should be amber flashers mounted on barricades, and placed alongside them at all such detours. There was neither evidence nor finding that there ·were any such flashers in place here.

■ Under the facts as discussed above we are not persuaded that the trial court's ·determination of negligence on the part of the defendant Road Commission should be ·overturned.

The principal point made by the defendant in arguing that Mr. Brooks must be found guilty of contributory negligence as a matter of law is that according to his own testimony he was not exceeding 35 miles per hour, and that at least by the sign: "Exit: 25 Miles Per Hour" he ·should have been warned a minimum of 75 feet before the exit; and that in reason·able reaction thereto he should have been able to reduce his speed sufficient to avoid overturning. The plaintiffs counter this ·argument by referring to the dangerous ·condition which this temporary exit created and point out: that Brooks was a truck ·driver of 25 years' experience; that he had never before been in a serious accident; and that with the momentum of the huge load of the truck-trailer plus 40,000 pounds ·of cucumbers, because of the abrupt turn

4. That burden of proof of contributory negligence is on the defendant and same rules apply as to issue of primary negligence see Smith v. Ogden & N. W. R.

and the lack of adequate warning signs, he was not able to avoid the calamity.

■ The general rules above stated concerning the trial court's prerogative in finding the facts as to the issue of defendant's primary negligence are equally applicable to his determination on the issue of contributory negligence charged against the plaintiff.[4] In exercising this prerogative, with his recognized advantages of seeing the witnesses and all of the evidence, his conclusions that the proximate cause of the accident was lack of reasonable care of the defendant Commission and not negligence on the part of the driver Brooks are matters upon which reasonable minds could differ, and consequently the judgment should be affirmed. Costs to plaintiffs (respondents). (All emphasis added.)

CALLISTER and TUCKETT, JJ., concur.

ELLETT, Justice (dissenting).

I dissent. I think the prevailing opinion gives more credit to the trial judge than the evidence warrants. The plaintiffs offered negative testimony regarding the signs along the highway. They and their

Co., 33 Utah 129, 93 P. 185; Stickle v. Union Pacific R. Co., 122 Utah 477, 251 P.2d 867.

**56**

witnesses simply did not see them. The witnesses for the State testified positively.

The foreman who installed the signs testified that he caused them to be erected during the week between November 14 and and November 21, 1966; that he worked with his men and erected signs as follows: (a) one sign 48 inches by 110 inches white on green reflectorized on the right-hand side of the freeway one mile before exit, which sign read, "End Interstate 1 mile"; (b) next sign black on white reflectorized 48 inches by 110 inches reading, "All traffic must exit"; (c) at the point where three lanes merged into two lanes a black and yellow sign 48 inches by 48 inches reading, "Single lane ahead"; (d) about 700 feet before the exit two signs 48 inches by 60 inches black on yellow reflectorized reading, "Exit 25 m. p. h."; (e) six chevron signs 48 inches by 96 inches red on white reflectorized on skids about three feet apart reading, "Single lane ahead," and so arranged as to compel traffic to enter a single lane; (f) in addition to the six chevron signs, one black on yellow reflectorized arrow 48 inches by 96 inches; (g) another chevron sign; and (h) a set of barricades 16 feet long black on white reflectorized about 100 feet behind the chevron signs.

The trooper who investigated the accident was told by Brooks, the truck driver, that there were no signs to advise him that the freeway was ending; and to satisfy himself, the trooper drove down the freeway and back. He testified positively that (a) one mile from exit there was a sign reading, "Freeway ends 1 mile"; (b) one-half mile from exit a sign read, "All traffic must exit"; (c) one-fourth mile from the exit a sign on each side of the lanes of traffic read, "Speed limit 25 m. p. h."; (d) there were some big red and white chevron signs 4 feet by 8 feet, about 6 feet above the level of the road and placed one behind the other with each extending further into the freeway to force traffic into a single lane, the first one being against the median strip; (e) there were some black and white barricades at the end of the freeway on white posts which had some arrows pointing to the exit; and (f) right at the exit there was a yellow sign with black lettering reading, "25 miles an hour."

It is difficult for me to see how the State can be found to be negligent at all, but assuming it to be so, I cannot conceive of the conduct of the driver of the truck as being anything but contributorily negligent.

The trial court found as a fact that the following signs were up:

That reflectors, markers and signs had been placed in various locations on the said freeway for the purpose of notifying and advising motorists of existing roadways and conditions, that at most the signs included "Freeway Ends One

Mile", at a point about one mile south of the off-ramp, "All Traffic Must Exit" about one-half mile south of the off-ramp, two black on Yellow 25 miles per hour speed signs about one-fourth mile from the exit, several red and white chevron channelizing signs, a horizontal black on white unlighted barricades at or immediately north of the exit, a 25 miles per hour black on yellow exit sign at or immediately south of the exit and a black on yellow arrow at the north edge of the exit.

He then *concluded* in the next *finding* that such signs failed to give adequate, reasonable or sufficient notice of the difficult or dangerous condition which existed.

The evidence would require a reversal if the judge meant to find *fewer* signs than he enumerated. He undoubtedly meant to find that there were *at least* the number of signs which he stated.

There might be a ground to complain if the sign had misled the driver of the truck, such as "Full speed ahead!" but he makes no claim that any sign misled him. He simply claims that he did not see the signs. To me this failure to see is contributory negligence which should defeat the claims of the plaintiffs.

I think a driver who drives into a curve at the end of the freeway at such a rapid rate of speed that he turns his vehicle over must be found to be guilty of negligence as a matter of law regardless of whether there were any signs at all. If the freeway did not end, then the driver should not have left it; and if it did end, then the driver should have been driving at such a rate of speed as to control the movements of his truck.

Section 41-6-46, U.C.A. 1953, provides:

(1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

\*   \*   \*   \*   \*   \*

(3) The driver of every vehicle shall, consistent with the requirements of subdivision (1) of this section, drive at an appropriate reduced speed  \*   \*   \* when approaching and going around a curve,  \*   \*   \*.

This case seems to me to be one of too much speed and not enough looking on the part of the plaintiff driver, either one of which would prevent recovery.

The 270° curve mentioned in the main opinion means nothing unless we know

the radius of the curve. The picture below shows the curve involved in this matter; and since it is taken from the right-hand side of the freeway, it accentuates the

amount of the curve over what it actually was.

I would reverse the trial court.

HENRIOD, Justice (concurring in the dissent of Mr. Justice ELLETT).

I concur in Mr. Justice ELLETT's dissent, except as to the photo at the end thereof. This photo is misleading since it does not reflect the signs that were actually in place at the time of the accident, and besides, the picture is unnecessary to support the dissent or to discredit the main opinion.