Margot DE VILLIERS, Plaintiff
and Appellant,

v.

UTAH COUNTY, Highland City, and
John Does 1–3, Defendants and
Appellees.

Nos. 920765–CA and 930274–CA.

Court of Appeals of Utah.

Oct. 5, 1994.

Darwin C. Hansen, Stephen G. Morgan, and Joseph E. Minnock, Salt Lake City, for appellant.

Gary B. Ferguson, Salt Lake City, for appellee Highland City.

Lee C. Henning and David C. Richards, Salt Lake City, for appellee Utah County.

Before BENCH, DAVIS and GREENWOOD, JJ.

## OPINION

DAVIS, Judge:

Plaintiff Margot de Villiers appeals from summary judgments entered separately in favor of defendants Highland City and Utah County, claiming that the trial court erred in ruling that Highland City was immune from suit under the Utah Governmental Immunity Act (the Act),[1] and that Utah County had no duty to erect a warning sign on 6000 West. We affirm.

## FACTS

In reviewing a grant of summary judgment, the facts and all reasonable inferences drawn therefrom are viewed in the light most favorable to the nonmoving party. *Higgins v. Salt Lake County,* 855 P.2d 231, 233 (Utah 1993). The facts below are stated accordingly.

Plaintiff was severely injured in an automobile accident on January 18, 1990. The accident occurred at the intersection of 11500 North (Oakview Drive) and 6000 West (the intersection) in Highland City, Utah. Oakview Drive is a privately owned road maintained by the Oakview planned unit development subdivision (Oakview PUD). Utah County owns and maintains 6000 West. Oakview Drive provides access to 6000 West for the Oakview PUD residents.

Before construction can commence on a planned unit development within the city limits of Highland City, a developer must submit a proposed plat to the Highland City Planning Commission (Commission) for approval. The original Oakview PUD plat submitted to the Commission provided that Oakview Drive would run along the northern boundary of the subdivision property line until it intersected with 6000 West. The Commission rejected this initial proposal and required certain modifications before the plat would be approved. Paul Frampton, the Oakview PUD developer, testified that the Commission wanted a common area that would create a park-like entrance and that would be separated from the residential lots by Oakview Drive. Richard Clayton, who was hired by Frampton to help procure approval of the Oakview PUD plat, first testified that the Commission itself designated the Oakview PUD common area.[2] However,

---

1. Codified at Utah Code Ann. §§ 63–30–1 to –38 (1993).

2. In her appellate brief, plaintiff misquotes Clayton's testimony in stating Highland City "designed" the common area. However, Clayton's

Clayton then testified that he did not recall whether the Commission was concerned about either the exact location of the common area or whether the common area had to be separated from the lots by Oakview Drive. The record does not reflect whether the Commission required that the common area be on the north entrance boundary line, or whether it directed Frampton to construct Oakview Drive where it is currently located.

Frampton hired an engineer who had prepared the original Oakview PUD plat, which included the design and specifications for Oakview Drive and how it was to intersect with 6000 West. After the original plat was rejected by the Commission, Frampton was required to "resubmit the plat showing the common area separated by the road." The plat was returned to Frampton for "redesign" by his engineer.[3] Frampton modified the plat so it complied with the Commission's requirements, and the plat was approved.

The approved plat positioned Oakview Drive and, hence, the intersection, near the top of a gradient; the parties agree that that location creates a precarious sight distance "in that motorists entering the [i]ntersection from [Oakview Drive] are unable to see motorists entering the [i]ntersection on 6000 West in time to avoid an accident." At the time of the accident, no warning signs were in place on 6000 West cautioning drivers of the approaching blind intersection.

Plaintiff filed suit against both Highland City and Utah County.

### Claims Against Highland City

In the suit against Highland City, plaintiff argues that Highland City had a duty to design, construct, sign, and maintain the intersection in a nonnegligent manner. Plaintiff also maintains that Highland City was negligent in approving the plat without requiring Frampton to relocate Oakview Drive along the northern boundary of the Oakview PUD.[4] The essence of plaintiff's complaint against Highland City is that, because the Commission conditioned approval of the Oakview PUD plat on placing the common area at the entrance to the Oakview PUD and required that Oakview Drive separate the common area from the residential lots, it "designed" the intersection. Because the location of Oakview Drive and the intersection create a dangerous condition based on the limited visibility, plaintiff alleges that the Planning Commission negligently designed the intersection.

Highland City moved for summary judgment, arguing that it was immune from suit under the Act because it merely approved the Oakview PUD plat. Plaintiff opposed Highland City's motion for summary judgment, claiming that Highland City designed the intersection, instead of simply approving the plat, and it had therefore waived immunity under Utah Code Ann. § 63–30–8 (1989), which waives governmental immunity for injuries caused by any defective, unsafe, or dangerous condition on a road. The district court granted summary judgment in favor of Highland City on the grounds that (1) Highland City was not responsible for the maintenance of either road involved in the accident, and (2) section 63–30–10(3)[5] of the Utah

testimony was that Highland City "designated" the common area.

3. Nothing in the record establishes that the Commission prepared any plans and/or specifications regarding Oakview Drive either before or subsequent to its rejection of the original plat.

4. Although plaintiff asserts in her complaint that Highland City was negligent in approving the Oakview PUD plat and that her injuries were a direct and proximate result of this negligence, on appeal plaintiff denies that her injuries arose out of this conduct and claims instead that her injuries arose only out of Highland City's negligent design of the intersection.

5. At the time of the accident, § 63–30–10(1)(c) provided:

 (1) Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury:

 . . . .

 (c) arises out of the issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization. . . .

Utah Code Ann. § 63–30–10(1)(c) (1989).

 In its ruling, the trial court cited § 63–30–10(3), Utah Code Ann., as the basis for its determination that Highland City's conduct of approv-

Code excepted Highland City from any waiver of immunity and, therefore, section 63–30–8 was inapplicable.

### Claims Against Utah County

Plaintiff also filed suit against Utah County, claiming it had a duty to design, construct, sign, and maintain the intersection in a nonnegligent manner. Plaintiff further alleged that Utah County was negligent for failing to conduct a traffic and engineering study prior to reducing the speed limit along 6000 West to 35 miles per hour in 1988.[6]

Utah County moved for summary judgment, arguing that it owed no duty to plaintiff, and even if it did, the Act shielded it from liability. The district court granted summary judgment in favor of Utah County, holding that because Utah County did not design, construct, or approve the intersection, it did not owe a duty to plaintiff. The court further held that, based on *Stevens v. Salt Lake County*, 25 Utah 2d 168, 478 P.2d 496 (1970), and *Jones v. Bountiful City Corp.*, 834 P.2d 556 (Utah App.1992), Utah County did not have a common law duty to erect a warning sign on 6000 West.

Plaintiff appeals both rulings of the trial court.

### STANDARD OF REVIEW

■ Summary judgment is appropriate only when, based on the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993). Whether a moving party is entitled to summary judgment is a question of law and, therefore, no deference is granted to the trial court's ruling. *Id.*

ing the Oakview PUD plat is excepted from the waiver of immunity. The correct citation at the time this cause of action arose is Utah Code Ann. § 63–30–10(1)(c) (1989).

6. Plaintiff suggests that if Utah County had conducted the traffic and engineering study before it lowered the speed limit on 6000 West, it would

### ANALYSIS

#### I. Highland City

■ On appeal from the trial court's grant of summary judgment in favor of Highland City, plaintiff raises only one issue—whether Highland City has waived immunity under the Act. Ordinarily, before reaching the issue of governmental immunity, it is appropriate to first determine whether there are grounds for liability. *See Ledfors v. Emery County Sch. Dist.*, 849 P.2d 1162, 1163–64 (Utah 1993); *Smith v. Weber County Sch. Dist.*, 877 P.2d 1276, 1278 (Utah App.1994). In a negligence action such as this, if a plaintiff has not alleged a valid duty and breach of that duty, courts will typically decline to reach the issue of immunity. *Ledfors*, 849 P.2d at 1163–64; *Rollins v. Petersen*, 813 P.2d 1156, 1162 (Utah 1991); *Ferree v. State*, 784 P.2d 149, 152–153 (Utah 1989). However, if the issue of governmental immunity is clear, it is proper to begin the court's analysis there. *Ledfors*, 849 P.2d at 1164; *Smith*, 877 P.2d at 1278. Plaintiff's appeal from the trial court's ruling in favor of Highland City may be summarily disposed of on the grounds of governmental immunity. Therefore, we address only that issue.

#### A. Section 63–30–8

■ Plaintiff argues that the trial court erred in granting summary judgment in favor of Highland City on the basis of governmental immunity. Plaintiff claims that since the Commission effectively required Frampton to move Oakview Drive 141 feet to the south of where it was originally planned so that the residential lots would be separated from the common area, Highland City "designed" the intersection. Plaintiff alleges that because the location of the intersection is dangerous, Highland City's immunity from suit is waived by section 63–30–8 of the Utah Code.[7] Highland City argues that plaintiff

have observed how dangerous the intersection was and, therefore, warned of the danger.

7. At the time of the accident, § 63–30–8 provided:

Immunity from suit of all governmental entities is waived for any injury caused by a defective, unsafe, or dangerous condition of any

incorrectly interprets the facts, and that "[t]he conditions do not change the process [of plat approval] from one of granting a license or permit to one of designing roads." We agree.

When determining whether a governmental entity is immune from suit, a court must apply a three-prong test:

> First, was the activity the entity performed a governmental function and therefore immunized from suit by the general grant of immunity contained in section 63–30–3? ... Second, if the activity was a governmental function, has some other section of the Act waived that blanket immunity? Third, if the blanket immunity has been waived, does the Act also contain an exception to that waiver which results in a retention of immunity against the particular claim asserted in this case?

*Ledfors*, 849 P.2d at 1164; *Taylor v. Ogden City Sch. Dist.*, 881 P.2d 907, 910 (Utah App.1994).

According to the *Ledfors* test, the first issue we must address is whether Highland City was performing a governmental function in connection with its involvement with the Oakview PUD plat. Although plaintiff alleges that the governmental function performed in this case is Highland City's design of the intersection, nothing in the record establishes that the Commission required Frampton to move Oakview Drive 141 feet to the south of where it was originally planned. What the facts do establish is that the Commission conditioned its approval of the Oakview PUD plat on the requirements that the common area be placed at the entrance to the Oakview PUD, and that Oakview Drive separate the common area from the residential lots. Contrary to plaintiff's assertion,

the Commission did not "direct or order" Frampton to move Oakview Drive to the dangerous location and, therefore, did not design the intersection. Highland City's conduct, out of which the dangerous intersection arose, was the approval of the Oakview PUD plat. Because the Utah Supreme Court has held that a municipality's review and approval of a subdivision plat is a governmental function, *Loveland v. Orem City Corp.*, 746 P.2d 763, 776 (Utah 1987), the first prong of the *Ledfors* test has been satisfied.

 We must next ascertain whether the Act provides a waiver from the general grant of immunity. Plaintiff asserts that Highland City's conduct falls within the waiver of immunity provided under section 63–30–8 by characterizing that conduct as designing the intersection.[8] Since Highland City did not design the intersection, it would be subject to section 63–30–8 only if it were responsible for the roads upon which the dangerous condition exists. Generally, a municipality has a duty to keep its streets maintained in a reasonably safe condition for public use. *Bowen v. Riverton City*, 656 P.2d 434, 437 (Utah 1982); *Jones v. Bountiful City Corp.*, 834 P.2d 556, 560 (Utah App, 1992). This duty is consistent with section 63–30–8. *Trapp v. Salt Lake City Corp.*, 835 P.2d 161, 161–162 (Utah 1992). "This duty seems generally grounded upon the common law principle that one who has control over a physical facility has an obligation to keep it in a safe condition." *Id.* at 162 (citation omitted). Therefore, under Utah law, a governmental entity is affected by the waiver of immunity under section 63–30–8 *only if it has control over the roads or highways upon which the dangerous condition exists.* Highland City does not own or maintain either road involved in plaintiff's accident. Oakview

highway, road, street, alley, crosswalk, sidewalk, culvert, tunnel, bridge, viaduct, or other structure located thereon.

Utah Code Ann. § 63–30–8 (1989). Section 63–30–8 was amended in 1991, adding the introductory language "Unless the injury arises out of one or more of the exceptions to waiver set forth in Section 63–30–10." However, this amending language is irrelevant to our analysis. *See* discussion, note 8.

8. Highland City argues that this Court should give preference to Utah Code Ann. § 63–30–10

(1989) over Utah Code Ann. § 63–30–8 (1989) based on the 1991 amendment to § 63–30–8, which applied the exceptions to immunity found in § 63–30–10 to § 63–30–8 by adding the introductory language "Unless the injury arises out of one or more of the exceptions to waiver as set forth in Section 63–30–10." However, the amending language added after this cause of action accrued gives a governmental entity a greater degree of immunity and, therefore, is not applicable. *See Taylor v. Ogden City Sch. Dist.*, 881 P.2d 907, 912 (Utah App.1994).

Drive is a private drive for which the residents of the Oakview PUD are responsible; 6000 West is a county road for which Utah County has sole responsibility. Because the dangerous condition was located upon roads for which Highland City has no responsibility, section 63–30–8 does not apply.[9]

### B. Section 63–30–10

■ Plaintiff also argues that if Highland City's conduct does not fall within section 63–30–8, Highland City waived immunity under section 63–30–10(1) of the Utah Code because the cause of action arose out of Highland City's negligent design of the intersection, and not its approval of the Oakview PUD plat.

When determining whether a governmental entity's conduct falls within the exceptions to section 63–30–10's waiver of governmental immunity, it is necessary for a court to " 'focus[ ] on the conduct or situation out of which the injury arose, not on the theory of liability crafted by the plaintiff or the type of negligence alleged.' " *Wright v. University of Utah,* 876 P.2d 380, 383 (Utah App.1994) (quoting *Ledfors v. Emery County Sch. Dist.,* 849 P.2d 1162, 1166 (Utah 1993)). A plaintiff's claim should be refused when it is drafted in an attempt to " 'evade [the section 63–30–10] statutory categories by recharacterizing the supposed cause of the injury.' " *Id.*

Plaintiff attempts to fashion a theory of liability based on a claim that Highland City negligently designed the intersection, rather than approved a plat. However, if plaintiff's injuries arose in any fashion out of Highland City's conduct, it was the approval of the Oakview PUD plat. By characterizing High-

land City's conduct as designing an intersection, plaintiff is merely attempting to evade the section 63–30–10(1)(c) statutory exception to waiver of immunity.

At the time this cause of action arose, section 63–30–10(1)(c) provided an exception to the general waiver of immunity for injury caused by the negligence of an employee if the injury arose from an issuance of any "approval." Utah Code Ann. § 63–30–10(1)(c) (1989). A municipality's approval of a subdivision plat falls squarely within this exception. *Loveland v. Orem City Corp.,* 746 P.2d 763, 777 (Utah 1987). Thus, Highland City's conduct of approving the Oakview PUD plat is clearly excepted from any waiver of immunity, and plaintiff's claim is effectively barred by this exception. The trial court's grant of summary judgment in favor of Highland City on the basis of section 63–30–10(1)(c) is affirmed.[10]

### II. Utah County

■ Plaintiff claims that the trial court erred in granting summary judgment in favor of Utah County on the ground that Utah County did not have a duty to erect a warning sign on 6000 West.[11] Utah County asserts that, based on the holdings in *Stevens v. Salt Lake County,* 25 Utah 2d 168, 478 P.2d 496 (1970), and *Jones v. Bountiful City Corp.,* 834 P.2d 556 (Utah App.1992), the trial court's ruling was correct. We agree.

■ Generally, a municipality has "a nondelegable duty to exercise due care in maintaining streets within its corporate boundaries in a reasonably safe condition for travel . . . and the city may be held liable for injuries proximately resulting from its failure

---

9. Plaintiff urges that section 63–30–8 applies equally to public roads and private roads open to public use. However, based on our holding, we do not reach this issue.

10. Based on our holding, we need not address the inspection issue raised by Highland City.

11. Plaintiff asserts that, in addition to its common law duty, Utah County had statutory and self-imposed duties to erect a warning sign at the intersection. The authorities relied upon by plaintiff not only fail to impose such a duty, but plaintiff attempts to raise the matters for the first time on appeal. " '[I]t is axiomatic that matters not presented to the trial court may not be raised

for the first time on appeal.' " *Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 242 (Utah App.1991) (quoting *Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1044 (Utah 1983)). Thus, this court will not consider these issues.

Plaintiff also raises the issue of whether Utah County had a duty to conduct a traffic and engineering study on 6000 West before lowering the speed limit. We find this issue to be without merit and decline to discuss it. *See State v. Carter,* 776 P.2d 886, 896 (Utah 1989); *State v. Vigil,* 840 P.2d 788, 795 (Utah App.1992), *cert. denied,* 857 P.2d 948 (Utah 1993).

to do so." *Bowen v. Riverton City*, 656 P.2d 434, 437 (Utah 1982); *Jones*, 834 P.2d at 560. However, "[a] county is not an insurer against accident nor a guarantor of the safety of travelers upon its roadways." *Provins v. Bevis*, 70 Wash.2d 131, 422 P.2d 505, 510 (1967); *cited with approval in Bramel v. Utah State Road Comm'n*, 24 Utah 2d 50, 465 P.2d 534, 536 n. 3 (1970). Further, " '[a] municipality has no common-law duty to maintain unobstructed visibility at an intersection' " and " 'is not generally liable for failure to install signs or signals.' " *Jones*, 834 P.2d at 560 (quoting 19 Eugene McQuillin, The Law of Municipal Corporations § 54.02, at 12, § 54.69a, at 233 (3d ed. 1985)). However, once a municipality takes the initiative to provide the public with traffic control devices upon which it will rely, the devices must be adequate and must be maintained in a nonnegligent fashion. *Id.; Bowen*, 656 P.2d at 437 (cities must "maintain traffic signals in a reasonably safe, visible, and working condition").

*Stevens v. Salt Lake County*, 25 Utah 2d 168, 478 P.2d 496 (1970) is analogous to the instant case. In *Stevens*, the plaintiff sued Salt Lake County for injuries sustained in an accident, which the plaintiff alleged was caused by limited visibility due to weeds growing upon private property adjacent to the public road. However, because the hazard was on private property adjacent to the public road, the Utah Supreme Court held that "plaintiff failed to show that there was any 'defective, unsafe, or dangerous condition' in the highway for which the County was responsible and had a duty to correct." *Id.*, 478 P.2d at 499. In this case, the dan-

gerous condition was created by the placement of Oakview Drive, which is on private property. Thus, there was no " 'defective, unsafe, or dangerous condition' [on 6000 West] for which [Utah] County was responsible and had a duty to correct."

Even if the placement of Oakview Drive created a dangerous condition on 6000 West, Utah County still has no duty to erect warning signs, even though it has a duty to maintain that road in a condition reasonably safe for travel. *See Jones*, 834 P.2d at 560. Thus, Utah County had no common law duty to place a sign on 6000 West warning motorists of the approaching intersection.[12] Accordingly, the trial court did not err in concluding that Utah County owed no duty to plaintiff and summary judgment in favor of Utah County was correct.[13]

## CONCLUSION

We hold that because Highland City's conduct arose from the plat approval process and not from the design of the intersection, the provisions of section 63-30-8 are not applicable and section 63-30-10(1)(c) controls. We further hold that Utah County did not have a common law duty to erect a warning sign on 6000 West. The trial court's grants of summary judgment in favor of Highland City and Utah County are affirmed.

GREENWOOD, J., concurs.

BENCH, Judge (concurring in result):

I would decide this case based on the absence of a "special duty" owed to this particular plaintiff by these defendants. *See,*

---

12. Plaintiff argues that Utah case law supports her argument that Utah County had a duty to erect a warning sign on 6000 West. However, the cases cited by plaintiff are distinguishable. If a municipality takes the initiative to erect traffic control devices upon which the public relies, whether stop signs or warning devices, it must ensure that the devices are adequate and maintained in a nonnegligent manner. In the cases cited by plaintiff, the governmental entity had already taken the initiative to either put up a stop sign or erect warning signs, but had either maintained the signs in a negligent fashion or had placed inadequate warning signs. *See Richards v. Leavitt*, 716 P.2d 276 (Utah 1985) (growth of shrubs and trees obscured motorists' vision of

stop sign); *Bowen v. Riverton City*, 656 P.2d 434 (Utah 1982) (fallen stop sign); *Carroll v. State Road Comm'n*, 27 Utah 2d 384, 496 P.2d 888 (1972) (earthen berms were inappropriate means to protect drivers from wash in abandoned road); *Bramel v. Utah State Road Comm'n*, 465 P.2d 534 (1970) (warning signs cautioning drivers of freeway end were inadequate).

13. Based on our holding, we need not address the governmental immunity issue raised by Utah County. *See Ledfors v. Emery County Sch. Dist.*, 849 P.2d 1162, 1163–64 (Utah 1993); *Rollins v. Petersen*, 813 P.2d 1156, 1162 (Utah 1991); *Ferree v. State*, 784 P.2d 149, 152–53 (Utah 1989).

*e.g., Ferree v. State,* 784 P.2d 149, 151 (Utah 1989); *Cannon v. University of Utah,* 866 P.2d 586, 588–89 (Utah App.1993), *cert. denied,* 879 P.2d 266 (Utah 1994); *Lamarr v. Utah State Dep't of Transp.,* 828 P.2d 535, 538 (Utah App.1992). I would therefore not reach any of the issues raised under the affirmative defense of governmental immunity. *See Day v. State,* 882 P.2d 1150, 1160 (Utah App.1994) (Bench, J., concurring).