Vince FISHBAUGH, Plaintiff, Appellant, and Cross–Appellee,

v.

UTAH POWER & LIGHT, A DIVISION OF PACIFICORP, a Utah corporation, Salt Lake City Corporation; Ronald S. Gibson, and Unisys, a foreign corporation, Defendants, Appellees, and Cross–Appellants.

No. 970092.

Supreme Court of Utah.

Oct. 2, 1998.

L. Rich Humpherys, Phillip S. Ferguson, Salt Lake City, for appellant.

David A. Westerby, Alexander Dushku, Salt Lake City, for appellees.

RUSSON, Justice:

Vince Fishbaugh appeals from the district court's entry of summary judgment, dismissing his negligence claim against Salt Lake City (the "City") and Utah Power & Light ("UP & L"). Fishbaugh was injured when he was struck by a car in a crosswalk. He claimed that the City and UP & L were at fault for failing to maintain the streetlights. The district court held that the City and UP & L owed Fishbaugh a duty to maintain the lights but granted summary judgment on the ground that there was no evidence that ei-

ther the City or UP & L was negligent. Fishbaugh also appeals the district court's denial of his motion to amend his complaint. The City and UP & L cross-appeal the court's ruling that they owed Fishbaugh a duty to maintain the lights. We affirm the grant of summary judgment.

## BACKGROUND

On September 21, 1993, at approximately 9:00 p.m., Fishbaugh was walking westward on a mid-block crosswalk located at 350 South West Temple Street in Salt Lake City, Utah, when he was struck by a car driven by Ronald Gibson.[1] At the time of the accident, the twenty-eight streetlights between 300 and 400 South on West Temple Street were not working due to a short in the photocell responsible for sensing low light and triggering the streetlights. Salt Lake City police officer Rose Jones arrived at the scene of the accident and, upon noticing the problem with the streetlights, notified police dispatch to communicate the outage to UP & L. After some delay, the police dispatcher reported back to Jones that UP & L knew of the outage and would correct the problem. In her investigating officer's report, Jones indicated that "Utah Power & Light stated that the lights were out prior to the time of the collision." Ronald Gibson, the driver of the car, testified at his deposition that he "might have heard a police officer make a comment to [the] effect" that UP & L had stated that the lights were out prior to the collision. Gibson could not remember which officer made the comment and was only eighty percent sure that he actually heard an officer make such a comment.

The City owns the twenty-eight streetlights at issue and had contracted with UP & L for their maintenance and repair. Pursuant to the contract, UP & L agreed to assume all liability and indemnify the City against all loss for liability caused by UP & L's negligence in carrying out the contract. Four days before the accident, a UP & L employee made a routine nighttime patrol of the streets in Salt Lake City and found that

two of the twenty-eight streetlights were not operating. It is unknown whether these two lights were repaired prior to the accident.

In May 1994, Fishbaugh filed a complaint against Gibson and UP & L, alleging that Gibson negligently operated his vehicle and that UP & L had "failed to properly maintain or operate" the streetlights. In September 1994, Fishbaugh filed a notice of claim against the City. Fishbaugh asserted that the City had been negligent in failing to correct the lighting problem, which it knew about prior to the accident, that the street's signing and lighting were defective, and that the street was unsafe and in a dangerous condition. In February 1995, Fishbaugh amended his complaint, adding the City as a defendant, but alleged only that the City was negligent in "discharg[ing] its duties regarding the exterior lighting system." Fishbaugh also added Unisys, Gibson's employer, as a defendant.

After discovery, the City and UP & L each moved for summary judgment on the basis that they did not owe a duty to maintain the streetlights and that even if they owed a duty, neither the City nor UP & L had notice of the outage prior to the accident and thus could not be held negligent. Fishbaugh opposed the motions for summary judgment, arguing, among other things, that the deposition testimony of Officer Jones and Gibson concerning the statements made by the dispatchers and the unknown police officer showed that the City and UP & L had notice of the outage prior to the accident. UP & L then moved to strike both Jones's and Gibson's testimony as inadmissible hearsay, which motion the court granted.

In July 1996, having already continued the trial once, the court continued the trial again. In setting a firm trial date of November 4, 1996, the district court stated that it did "not intend to continue the trial date again." On September 20, 1996, forty-four days before trial, Fishbaugh moved to amend his complaint to "expressly include an additional factual allegation of negligence against [the City] regarding improper signing at the

---

**1.** Ronald Gibson and his employer, Unisys, were also defendants in this action but are not parties to this appeal.

crosswalk." The City opposed this motion as untimely and highly prejudicial given the impending trial date, and the court denied the motion.

On October 21, 1996, the court ruled on the motions for summary judgment, stating that "having installed and operated the streetlights, [the City] owed a nondelegable duty in tort to pedestrians to maintain the streetlights in a reasonably safe manner" and that UP & L by virtue of its contract with the City "also owed to pedestrians a duty in tort to maintain the streetlights." Notwithstanding, the court granted the City's and UP & L's motions for summary judgment on the ground that there was no evidence that either the City or UP & L "was negligent in any manner." In doing so, the court specifically found that there was no evidence that either the City or UP & L "knew, or reasonably should have known, that all of the streetlights were not operating at any time when [UP & L] had a reasonable opportunity to remedy the outage." In November 1996, the case went to trial against only defendants Gibson and Unisys, and the jury returned a verdict in favor of Fishbaugh.

On appeal, Fishbaugh alleges that the district court erred in ruling that there was no evidence to establish that either the City or UP & L was negligent. Fishbaugh argues that the testimony of Officer Jones and Gibson—that the dispatchers and an unidentified police officer had stated that UP & L knew of the outage prior to the accident—establishes that UP & L had notice of the streetlight outage before the accident and that the court erred in excluding these statements as inadmissible hearsay. Fishbaugh argues that the statements were admissions of a party-opponent or, alternatively, that they qualified under the so-called "catchall exceptions" and the public record and report exception to the hearsay rule. Fishbaugh also alleges that the district court erred in denying his motion to amend his complaint to include a claim for improper signing at the crosswalk.

On cross-appeal, the City alleges that the district court erred in ruling that the City owed a duty in tort to pedestrians to maintain the streetlights. UP & L alleges that

the district court erred in ruling that UP & L owed such a duty by virtue of its contract with the City to maintain and repair the streetlights.

Thus, the issues before us are whether the district court erred in (1) ruling that the City and UP & L owed a duty to maintain the streetlights, (2) granting summary judgment on the ground that there was no evidence of negligence, and (3) denying Fishbaugh's motion to amend his complaint.

## STANDARDS OF REVIEW

 The applicable standards of review for the above-listed issues are as follows: First, the issue of "whether a 'duty' exists is a question of law" which we review for correctness. *Weber v. Springville City*, 725 P.2d 1360, 1363 (Utah 1986). Second, summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). When reviewing a grant of summary judgment, "we evaluate the evidence and all reasonable inferences fairly drawn from that evidence in a light most favorable to the party opposing summary judgment." *Bowen v. Riverton City*, 656 P.2d 434, 436 (Utah 1982). Summary judgment can be appropriate in negligence cases but only in "the most clear cut case." *Id.* Third, "[t]he standard of review of a denial to amend pleadings is abuse of discretion." *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 92 (Utah 1992).

## ANALYSIS

As a general rule, a municipality possesses no duty to light its streets. The rule has been stated as follows:

A municipality has no common-law duty to light its streets. It may, if it chooses, leave them unlighted, and cannot be made liable in damages to a traveler who is injured solely because of its failure to light them, since power to light does not imply the obligation to do so.

19 Eugene McQuillin, *The Law of Municipal Corporations*, § 54.101 (3d ed.1994); *see also Thompson v. City of New York*, 78 N.Y.2d 682, 578 N.Y.S.2d 507, 585 N.E.2d 819, 820

(N.Y.1991); 39 Am.Jur.2d *Highways, Streets, and Bridges* § 405 (1968). Indeed, this court has stated, "As to the duty of the city to light its streets generally it may be said that no such duty exists at common law." *Herndon v. Salt Lake City,* 34 Utah 65, 84, 95 P. 646, 652 (1908).

■ Because a municipality has no common law duty to light its streets, it has no duty to maintain such lights that it has nevertheless elected to install. 39 Am.Jur.2d, *supra,* § 406 ("[T]he fact that established lights are defective is not, of itself, negligence which will render a municipality liable for injuries to a traveler on the highway, if, notwithstanding such defect, the highway is reasonably safe ...."); *see also* McQuillin, *supra,* § 54.101 ("Neither the absence of lights nor the use of defective lights is, in itself, negligence."). However, a municipality does have the clear duty to maintain its streets reasonably safe for travel. *See Braithwaite v. West Valley City Corp.,* 860 P.2d 336 (Utah 1993); *Bowen v. Riverton City,* 656 P.2d 434 (Utah 1982); *Scott v. Provo City,* 14 Utah 31, 45 P. 1005 (1895). In conjunction with this duty, a municipality also has a duty to warn of dangerous conditions on its streets. *See* 39 Am.Jur.2d, *supra,* § 397 ("It is the duty of the responsible public authority to exercise reasonable care to warn travelers of defects, obstructions, and unsafe places in its streets...."); *Bramel v. State Road Comm'n,* 24 Utah 2d 50, 465 P.2d 534 (1970). Such warning may be given through various mediums, including the use of lights. What is required is that the warning be "reasonably sufficient" to warn travelers. 39 Am.Jur.2d, *supra,* § 397; McQuillin, *supra,* § 54.99. Thus, while there is no general duty to light municipal streets, "[a] duty to light, and the consequent liability for failure to do so, may ... arise from some peculiar condition rendering lighting necessary in order to make the streets safe for travel." 39 Am.Jur.2d, *supra,* § 405. Therefore, if there is a hazardous condition on the street requiring lighting, a municipality would have the duty to light the street and to maintain such lights. *Thompson,* 578 N.Y.S.2d 507, 585 N.E.2d at 820.

■ In the present case, the City concedes that "a municipality's failure to properly maintain streetlights is actionable only if lighting is necessary to warn of a hazardous condition rendering the street unsafe." It argues, however, that Fishbaugh never asserted in his complaint that the street was unsafe due to a hazardous condition but, rather, asserted only that the City and UP & L were negligent for simply failing to maintain the streetlights. Thus, the City maintains that Fishbaugh is precluded from asserting that lighting was required to render the street safe. However, under Utah's liberal notice pleading requirements, all that is required is that the pleadings "be sufficient to give 'fair notice of the nature and basis of the claim asserted and a general indication of the type of litigation involved.'" *Gill v. Timm,* 720 P.2d 1352, 1353 (Utah 1986) (quoting *Blackham v. Snelgrove,* 3 Utah 2d 157, 161, 280 P.2d 453, 455 (1955)). Fishbaugh's amended complaint alleges that the City "negligently discharged *its duties regarding the exterior lighting system* by, among other things, failing to take appropriate action to maintain or repair the lighting." (Emphasis added.) The reference to the City's "duties" regarding the streetlights clearly encompasses the duty to warn of a hazardous street condition through the use of lights and is sufficient to give notice of the nature of the claim asserted.

Fishbaugh asserts that the City's duty was much broader, arguing that by simply undertaking to install the streetlights, the City had a duty to maintain them. In support of this broader duty, Fishbaugh focuses on the following language in *Richards v. Leavitt,* 716 P.2d 276 (Utah 1985):

> "[T]he rule is that once having elected to erect devices to guide, direct or *illuminate* traffic where no duty exists to do so, a municipality then has a duty to maintain those devices in a condition conducive to the safe flow of traffic and will be liable for its negligence in failing to do so."

*Id.* at 278 (emphasis added) (quoting 18 E. McQuillin, *The Law of Municipal Corporations,* § 53.42 (3d ed.1984)). We do not read this language to impose a duty to maintain streetlights that illuminate an otherwise safe

street, as such would conflict with the well-established rule set forth above. Rather, to the extent the statement refers to lights that illuminate a safe street, we read it to mean that a municipality has a duty to ensure that such lights do not create a danger on or near the street, such as where a streetlight is angled in such a way as to blind a driver or a pedestrian, or where a light post is neglected to such a degree that the structure itself creates a hazard.

Fishbaugh also cites to the Restatement (Second) of Torts § 323 in support of a broader duty. However, liability under that section is generally limited to instances where the failure to exercise reasonable care in the undertaking has placed the injured party in a worse position than he would have been in had the undertaking not occurred, or where the injured party relies upon the undertaking. *See* Restatement (Second) of Torts § 323 (1965);[2] *id.* cmt. c;[3] *see also Nelson v. Salt Lake City*, 919 P.2d 568 (Utah 1996). In the present case, the lack of lighting did not put Fishbaugh in a worse position than if the streetlights had never been installed, and there is no suggestion of reliance.

■ Therefore, the district court erred in ruling that the City had a duty to maintain the streetlights simply because it installed them. As discussed above, the City's duty to install and maintain streetlights is dependent upon the existence of a hazardous condition. If there had been a hazardous condition on the street requiring lighting, the City would have had a duty to light the street and to use reasonable care in maintaining such lights. However, even assuming a hazardous condition requiring lighting and a duty to maintain the lights in the present case, we agree with the district court that there is no evidence that either the City or UP & L was negligent.[4]

To breach the duty to maintain streetlights in order to make the street safe for travel, a municipality must have notice that the lights were not functioning properly and then must fail to respond within a reasonable time to repair the lights. *See* McQuillin, *supra*, § 54.101.20 ("[W]here lights have been provided by the municipality but they are not working, in order for there to be municipal liability predicated on negligence, there must be a showing that the municipality knew or should have known the lights were not working and that it failed to repair them."). As we stated in *Schnuphase v. Storehouse Markets*, 918 P.2d 476 (Utah 1996):

> "[F]ault cannot be imputed to the defendant so that liability results therefrom unless two conditions are met: (A) that he had knowledge of the condition, that is, either actual knowledge, or constructive knowledge because the condition had existed long enough that he should have discovered it; and (B) that after such knowledge, sufficient time elapsed that in the exercise of reasonable care he should have remedied it."

*Id.* at 478 (quoting *Allen v. Federated Dairy Farms, Inc.*, 538 P.2d 175, 176 (Utah 1975)). Although *Schnuphase* concerned slip and fall liability of a business owner, the same principles apply here.

The district court granted summary judgment and dismissed the City and UP & L from the case because it could find no evidence that either the City or UP & L "knew, or reasonably should have known, that all of

2. Section 323 provides:
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
 (a) his failure to exercise such care increases the risk of such harm, or
 (b) the harm is suffered because of the other's reliance upon the undertaking.

3. Comment c provides in part:

> The actor may normally abandon his efforts at any time unless by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him.

4. Because we conclude that there is no evidence to suggest that UP & L was negligent, we do not reach the question whether UP & L owed a duty to Fishbaugh to maintain the streetlights by virtue of its contract with the City to repair and maintain the streetlights and to assume all liability caused by its negligence in carrying out the contract.

the streetlights were not operating at any time when [UP & L] had a reasonable opportunity to remedy the outage." Fishbaugh argues that Jones's and Gibson's testimony and Officer Jones's report provide evidence that the City and UP & L knew of the streetlight outage prior to the accident. Officer Jones testified during her deposition that an unknown police dispatcher told her that an unknown UP & L dispatcher had said that UP & L had prior knowledge of the streetlight outage. In her report, Officer Jones reported that "Utah Power & Light stated that the lights were out prior to the time of collision." Gibson testified during his deposition that he "might have heard a police officer make a comment to [the] effect" that UP & L had stated that the lights were out prior to the collision. The district court excluded the above evidence as inadmissible hearsay. Fishbaugh argues that the evidence is admissible because (1) the statements of both dispatchers are either admissions of a party-opponent under Utah Rule of Evidence 801(d)(2)(D) or, alternatively, are admissible under Utah Rules of Evidence 803(24) and 804(b)(5), the so-called catchall exceptions to the hearsay rule; (2) the statement in Officer Jones's report is admissible under Utah Rule of Evidence 803(8), the public records and reports exception to the hearsay rule; and (3) Gibson's testimony is admissible under Utah Rules of Evidence 803(24) and 804(b)(5), the catchall exceptions.

We do not need to consider whether the above evidence is admissible under the stated rules of evidence because even assuming admissibility and that UP & L had notice of the outage at some time prior to the accident, there is no evidence indicating how long UP & L had such notice. Without any evidence to that effect, Fishbaugh cannot prove that the City and UP & L failed to repair the streetlights within a reasonable time after receiving notice and that they were thus negligent in maintaining the streetlights.

Fishbaugh argues that there is such evidence because UP & L knew four days prior to the accident that two of the twenty-eight

streetlights were not working; thus, UP & L had sufficient time to repair and maintain the lights. However, Fishbaugh ignores the fact that the outage was caused by a short in the photocell which knocked out all twenty-eight lights. There is no evidence that the outage caused by the photocell was related in any manner to the two lights being out four days earlier. Thus, the fact that the two lights were out is largely irrelevant. Fishbaugh also argues:

> A fact finder could infer that since the street lights do not operate during daylight hours, the advance notice to UP & L/SLC referred to by Officer Jones, must have taken place at least the night before, since the street lights would have been on only a short time before the accident.

However, an equally plausible inference is that UP & L was notified of the outage during that short time before the accident, perhaps just minutes before. There is simply no evidence indicating when the City and UP & L had prior notice of the outage.[5] Without such evidence, it is impossible to determine whether the City and UP & L failed to repair the lights within a reasonable time after receiving notice. Thus, even assuming that the City and UP & L had notice prior to the time of the accident, Fishbaugh cannot show that they were negligent in maintaining the lights. Therefore, the court did not err in granting summary judgment.

■ Finally, Fishbaugh asserts that the district court erred in denying his motion to amend his complaint to assert a claim against the City for "improper signing at the crosswalk." When leave of the court is required to amend a pleading, Utah Rule of Civil Procedure 15(a) provides that "leave shall be freely given when justice so requires." We have stated, " 'Courts should be liberal in allowing amendments to the end that cases may be fully and fairly presented on their merits.' " *Timm v. Dewsnup*, 851 P.2d 1178, 1183 (Utah 1993) (quoting *Hancock v. Luke*, 46 Utah 26, 38, 148 P. 452, 457 (1915)). However, the liberal application of rule 15(a) "is limited when the opposing party does not

---

5. Fishbaugh admits that he does not know when the outage occurred. At the summary judgment hearing below, counsel for Fishbaugh stated,

"We don't know when the lights went out specifically."

have adequate opportunity to respond to the amended pleadings." *Id.* Indeed, " '[a] primary consideration that a trial judge must take into account in determining whether leave should be granted is whether the opposing side would be put to unavoidable prejudice by having an issue adjudicated for which he had not had time to prepare.' " *Kasco,* 831 P.2d at 92 (quoting *Bekins Bar V Ranch v. Huth,* 664 P.2d 455, 464 (Utah 1983)).

In the present case, the trial date had already been continued twice. After continuing the trial for a second time and setting a firm trial date of November 4, 1996, the district judge specifically stated, "I do not intend to continue the trial date again." Further, as evidenced by his notice of claim, Fishbaugh knew that he may have had a claim against the City for defective signing, but he failed to state such a claim in his amended complaint against the City. Then, forty-four days before trial, Fishbaugh sought to amend his complaint to include a claim for improper signing. The district court, in its discretion, denied the amendment, stating, "Justice does not require that this amendment be allowed because it is made so close to trial and Salt Lake City will not have an adequate opportunity to defend against this claim before trial." Given the aforementioned circumstances, we are unable to conclude that the district court abused its discretion in denying Fishbaugh's motion to amend his complaint.

## CONCLUSION

We affirm the district court's entry of summary judgment in favor of the City and UP & L. If the street was in a hazardous condition requiring lighting, a duty would have existed to install and maintain streetlights. Assuming such a duty existed, Fishbaugh did not present any evidence that the City and UP & L failed to repair the outage within a reasonable time after receiving notice. Therefore, Fishbaugh cannot prove that the City and UP & L were negligent in maintaining the lights. Further, the trial court did not abuse its discretion in denying Fishbaugh's motion to amend his complaint.

HOWE, C.J., DURHAM, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur in Justice RUSSON's opinion.